No. 61.—THE GOVERNOR *ex rel.* ABNER M. HOUSE, plaintiff in error, *vs.* THE JUSTICES OF THE INFERIOR COURT OF TALBOT COUNTY, defendants in error.

[1.] When the issue is, what is the *value* of a work, it is one to which proof of the kind and value of the hands employed to build the work, or of the mode and manner of their work, or of what their services were worth, is not admissible.

[2.] The Justices of the Inferior Court, when they act in reference to the building of bridges, must be together, and not separate.

[3.] It is a general principle, that if the effect of a witness' testimony will be to create or to increase a fund in which he may be entitled to participate, he is incompetent.

Mandamus, in Talbot Superior Court. Tried before Judge POWERS, March Term, 1856.

Abner M. House states in his petition for *mandamus*, that he had contracted with the defendants in error to build a bridge over Lazer Creek, in Talbot County, as a public way, and that they were to pay him $100 in advance, and the value of the work less that sum when finished. He further alleges, that the bridge was built according to the terms of the contract, and that the value of the work was demanded,

and that said Justices refused to draw their order on the County Treasurer therefor, as they had agreed to do, although they had accepted said bridge.

The Justices, in their return, denied all the allegations of the relator, and say they are false in every particular. They give the history of certain transactions growing out of the building of a certain bridge by the relator, and his contracting to keep the same in repair, which finally led to the building the bridge in question, and which last bridge they say was built without their authority, and in the absence of any contract whatever between the parties. They admit that having been informed that the relator, whilst building said bridge, had exhausted his means, and knowing he had been unfortunate in the previous transactions, they had let him have $100 to assist him in the work, but they deny that the same was done under any contract whatever, and go into a long statement of facts going to show that they are not responsible as charged.

A bond of relators, respecting the keeping in repair of a former bridge for five years—E. H. Worrill being security—was made a part of the return.

Issue was joined upon this return, and the parties went to trial, introducing a great deal of testimony.

The relator introduced the minutes of Talbot Inferior Court for county purposes, and read the following order:

" May Term, 1852. Ordered, that a road be established, commencing at a bridge now being built on Lazer Creek, below Ragland's mill, and intersecting the road from Talbotton to Belview, at the corner of Mrs. Dennis' field.

" June 21st, 1852. Ordered, that Peter E. Dennis, John H. Bryant and Kenan Couch be appointed commissioners to let out the building of one rock pillar on the south side of Lazer Creek, immediately below Couch and Ragland's mill, as a foundation for a bridge, the pillar to be put below the surface of the ground on a firm foundation, and be built four feet above the surface of the ground; and the commissioners

are hereby authorized to let out the building of another rock-pillar on the opposite side of the creek, if they should think it necessary."

"June 21, 1852. Ordered, that the County Treasurer pay Abner M. House $100 to enable him to go on and complete the bridge now being built by him below Couch & Ragland's mill on Lazer Creek." At the heading of each meeting at which these orders were passed, the recital is made that the Court met for county purposes, and that a majority of the Court were present.

E. H. WORRILL testified, that he had a conversation with William B. Marshall, (one of the Justices of the Inferior Court,) in the summer of 1851 or 1852, and urged the necessity of building a bridge over Lazer Creek, below Couch & Ragland's mill, and stated to him that Abner House wanted to build the bridge, and if the Inferior Court would erect a stone pillar at each bank of the creek, whereon to place the bridge, and give House $100 in advance, he would furnish the materials, build the bridge and then leave it to Asa Bates or John Goodwin to say what it was worth. Marshall made some objection to the bridge being built by House, because he did not believe House could build a lattice bridge; witness urged the building of the bridge as a matter of public necessity, and expressed the opinion that House could do the work well; the Inferior Court was to meet next day to make some arrangement about building the bridge; Marshall told witness to say to the Justices present that he could not attend the meeting of the Court, but would assent to anything they would do. The Court met, Justices Maxwell, Carter and Jones being present, at Mr. Yarbrough's store-house; witness attended in company with House and stated the conversation had with Marshall, repeating the proposition of House and urging its acceptance; witness does not know whether the Court thought they made a contract with House to build the bridge or not, but witness thought the parties made a contract, for the Court then and there passed orders to ap-

point commissioners to have the pillars built, and to advance House $100.

John Goodwin testified, that he is a bridge builder, and. built a bridge near Couch & Ragland's mill for which he got $1.975; that he examined the wreck of a bridge built by House at the point where the present bridge stands; the workmanship was pretty fair; thinks it possible it might have stood five years.

J. F. Baxter was introduced, and gave a minute descrip-- tion of the bridge built by House; said it was about the same length of the bridge built by Goodwin.    Witness stated that the bridge was used by the public from September, 1852, until it was carried off in March, 1853; he considered it a strong and safe bridge ; the witness gave several reasons for this opinion; he thinks a saw-mill which was washed away, carried the bridge off; the members of the Inferior Court had two meetings at the bridge, one shortly after it was completed, and the other a short time before it was washed away; the members of the Court present refused to accept and pay for the bridge, unless House would give bond and security that the bridge should stand four years, which House declined to do; witness made an estimate of the lumber in the bridge, and found it to be worth either $700 or $1100—he thinks the latter sum; he thought the value of the bridge was $500 less than the one built by Goodwin, but was not a builder, and no judge of such work; the freshet which carried off said. bridge was higher than any he had ever known at that place. At the last interview between the Court and House, the Court authorized witness to ask House if he would take $1.500 for the bridge, but did not say they would give it; during that interview, while the Court were gone up above the mill to . select a bridge-site across the mill-pond, heard House say that as the Court would not pay him for the bridge, he would . stop it up; the Court and House were subsequently together, and the Court left without selecting a bridge-site, as far as witness ever heard of, and House without stopping the bridge up.

Relator also offered to prove by BAXTER, the kind and value of the hands employed by House, the mode and manner of their work, and what their services were worth per day. The Court ruled out this testimony as irrelevant, and relator excepted.

Other testimony was introduced by relator, going to show the manner in which the bridge was washed off; that the bridge was a strong one, and that the freshet by which it was carried off, was higher than had been seen in a number of years.

Relator offered to prove by one ROBINSON, that at the instance of a majority of the Justices of the Inferior Court, Robinson was induced, by their authority severally given, to make, and that he did make to said relator, sometime in the early part of 1853, a proposition for settlement of the matter in reference to the building of said bridge; the purport of which was, that said Court would take said bridge and leave it to five men (naming them) to say how much should be paid relator for said bridge; that said House agreed to said proposition, and witness reported back to a majority of said Court, severally, the acceptance by House of the proposition; that no objection was made by the members of said Court; that the members of the Court were not together when they authorized said proposition to be made, nor when the witness reported its acceptance; and further, that said bridge was carried off in the freshet before the time appointed for the meeting of said commissioners. This testimony being objected to, was ruled out by the Court, on the ground that the acts and admissions of a majority of the Court made while apart from each other, were not binding upon them as a Court. To this ruling relator excepted.

Relator also offered to examine LEWIS WIMBERLY as a witness in said case, who was objected to by defendants on the ground that he was interested. Wimberly testified, on his *voir dire*, that House was indebted to him and had given him an order for the debt on the county, which had not been accepted or paid, and which the Court had refused to accept;

that House was insolvent, and the witness expected, if he ever got any pay, he would get it out of the verdict in this case. The Court then decided that he was an incompetent witness and refused to allow him to testify, and relator excepted.

Counsel for relator assign as error the several rulings of the Court excluding testimony offered by relator in said case.

STUBBS & HILL, for plaintiff in error.

No appearance for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

House, in his petition, says that the Justices of the Inferior Court were to pay him $100 in advance, and the value of the work less that sum. If that is so, what he had the right to prove, was the *value of the work.*

[1.] Proving the kind and value of the hands he employed, the mode and manner of their work, or what their services were worth by the day, would not have been proving the value of the work. The work might have been wholly worthless, let the facts as to these particulars stand as they might.

We think, therefore, that the Court below did not err, in excluding the evidence of Baxter, as to these particulars.

Must the Justices of the Inferior Court be together, when they act in reference to the building of a bridge, or may they be separate? The Court below held that they must be together; and we think properly so held.

The twenty-ninth section of the Act of 1818, "to alter and amend the Road Laws of this State," is as follows: "The Justices of the Inferior Courts of each county in this State, or a majority of them, shall have power and authority to hear and determine on all matters which may come before them, relative to roads, bridges, &c. as are authorized by law, either in term time, or while sitting for ordinary purposes; or at any special meeting held for that purpose."

[2.] The power to hear and determine at a time when the Court is in some form assembled in session, is all that is given.

And is it not generally true, that a power given to two or more, is a power to be exercised by them only when they are together ?

[3.] "It is a general rule of evidence, that if the effect of a witness' testimony will be to create or to increase a fund in which he may be entitled to participate, he is incompetent." (*Ph. Ev. Cow. & Hill's Notes, note* 108.)

This, it is plain, would have been the effect of Wimberly's testimony, if that testimony had been received. The Court, therefore, was right in not receiving it.

So, we affirm the several decisions complained of.