THE MOBILE FIRE DEPARTMENT INSURANCE COMPANY, plaintiff in error, *vs.* COLEMAN & COLLAT, for use, defendants in error.

1. Parol evidence is admissible to prove that the insurance agent knew a fact which he ought to have stated in the policy, but did not.
2. To render a contract of insurance void, under the Code of Georgia, for any matter, whether of covenant or representation, there must be some degree of materiality in such matter.
3. The cash value of a house is not necessarily what it cost to build it, or what it would cost to build a similar house at the same place.
4. There was no material error in the charge of the court, and the verdict is warranted by the evidence under the law applicable to the case.

Insurance.    Evidence.    Principal and Agent.    New Trial. Before Judge TOMPKINS.    Chatham Superior Court.    May Term, 1876.

This was assumpsit upon a policy of insurance by which the defendant contracted to insure the plaintiffs against loss by fire, to the extent of "$1,000.00 on their two-story wooden store," and "$3,000.00 on their stock of general merchan-

dise," etc. The defendant pleaded, amongst other matters, over-valuation and breach of warranty, fraud and false swearing, and that the building was on leased ground, and the interest of plaintiffs less than the unconditional and sole ownership, but not so entered on the policy.

The following facts were disclosed by the testimony:

The application for insurance stated that the actual cash value of the building to be insured was $3,000.00, of the merchandise $5,000.00. It also provided that not more than three-fourths of the value of property would be insured. The applicants covenanted that the foregoing statements were true, and agreed that they, with answers to certain questions propounded, should be considered the basis on which the insurance was to be effected, and understood as incorporated in and forming a part and parcel of the policy.

On the face of the policy was this provision: "Special reference being had to the insured's application and diagram, which is their warranty and a part hereof. It is understood and agreed to be a condition of this insurance that in case of any loss or claim under this policy, this company is and shall be liable only for three-fourths of the same, not exceeding the sum herein insured, and that one-fourth shall be borne by the insured."

The first condition of the policy provided that "if the interest of the assured in the property, whether as owner, trustee, * * lessee, or otherwise, be not truly stated in this policy, * * this policy shall be void."

The third condition provided that "if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, or if the building assured stands on leased ground, it must be so represented to the company, and so expressed in the written part of the policy, otherwise the policy shall be void."

Amongst the memoranda which followed the conditions was this: " And it is hereby mutually understood and agreed, by and between this company and the assured, that this

policy is made and accepted, upon and with reference to the foregoing terms and conditions, * * * all of which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for in writing."

Also this: "It is furthermore understood and made part of this contract, that the agent of the company has no authority to waive, modify, or strike from the policy, any of its printed conditions."

The building was on ground leased for five years, the consideration of the lease being the erection of the building, which was to become the property of the lessor at the expiration of the lease. It cost from $1,500.00 to $1,700.00, though plaintiffs swore it was worth $3,000.00. It could be replaced for a trifle less than its original cost.

Testimony was offered by the plaintiffs to show that the agent of the defendant, at the time the application was made for insurance, was informed that the building stood on leased ground. To this the defendant objected, but the evidence was admitted.

The agent testified that he would have insured the property for the amounts covered by the policy even though he had known that the building was on leased ground, and that if he had the information at the time of the application, it was his fault that it was not inserted.

If the rulings of the court were correct upon the questions of law presented in the case, there was evidence to sustain the verdict.

The jury found for the plaintiffs $3,849.61, with interest. The defendant moved for a new trial upon various grounds, all of which may be reduced to the following:

1. Because the court erred in admitting testimony to show that the defendant's agent knew, at and before the issuing of the policy, that the insured building was on leased ground.

2. Because the court charged the jury that the fact that

certain representations of the assured in their application for insurance, which were warranted to be true, were untrue, did not invalidate the policy, unless the nature, character or extent of the risk was thereby changed.

Here was the main point in the case, and the question is presented in many ways in the motion for new trial. Defendant insisted that if any of the statements made in the application, which were warranted to be true, were false, the policy was void, but the court held that this result did not follow unless the risk was, in some way, thereby changed.

3. Because the court erred in charging, that if the jury found that the building was on leased ground, and the defendant knew nothing of it, was not informed of it, that avoids the policy; but if the defendant did know, through its agent, and that agent knew it ought to have been inserted, and did not do it, then it is as though it had been inserted.

4. Because the court erred in charging that the cash value of the building when insured, was not necessarily the cost of erecting it.

5. Because the verdict was contrary to the law and the evidence.

The motion was overruled, and the defendant excepted.

W. D. HARDEN, for plaintiff in error.

R. E. LESTER, for defendants.

BLECKLEY, Judge.

1. The insured had an insurable interest. That is not disputed. They owned the building for a longer period than the insurance had to run, and were under covenant with their lessor to rebuild, in case of its destruction. For all purposes of honesty and good faith, as between themselves and the insurance company, they were owners. Their application, therefore, was true as far as it·went. It did

not represent what their estate in the building was; nor did the terms of the contract require them to make that disclosure in the application, or elsewhere *in writing.* If they made it orally, they did all that they were required or expected to do. The insertion of the fact in the policy was the business of the agent. It was not incumbent upon them to supervise the execution of his work. He was not their servant, but the servant of the company. What he knew, the company knew, notice to him being notice to it— Code, §2200. Because he omitted to create written evidence that they made known the true character of their estate in the premises, shall other evidence be forever excluded? Shall the fact never be proved, because the kind of evidence which the company intended their agent to furnish as a memorial of it, was not furnished, in consequence of his neglect? Can the company thus take control of the subject of evidence, and have rules applied to its transactions that do not apply to the transactions of other people? Generally, what takes place in parol may be proved by parol. Here was a parol communication, made by the insured to the agent of the insurer. The law did not require it to be made in writing, nor did the contract between the parties so require. When the question arises in court whether it was made or not, why may not the parol act of making it be proved by parol evidence? We think it may be done, and so rule—40 *Ga.*, 135 ; 41 *Ib.*, 660. The agent was not merely empowered to receive applications, but to make contracts. The company he represented was not a corporation of this state. It was present here by him, and his acts and omissions were its acts and omissions. Representations made to him in the regular transaction of business, were made to it.

2. So much of this case as turned upon dealing with the subject of materiality, whether of covenant or representation, we think is ruled by 53 *Ga.*, 537. The Code governs the contract, and the construction of the Code is settled, to the effect that what is wholly immaterial to the risk, is so

utterly immaterial that the yea or nay of it will not render the policy void. If this be the true meaning of the Code, even an express stipulation by the parties that the validity of the policy shall depend on immaterial as well as material matters, is, at bottom, an attempt to repeal the law. Such a stipulation is itself immaterial, in the sense of being idle and nugatory. The Code, instead of relegating to the parties the subject of materiality, holds possession of it for rational and honest adjudication by the tribunals of the country. Whoever makes a contract of insurance in this state, must submit to have its force and effect governed by the statutory provisions applicable to that class of contracts. There is a public policy involved in standing by substance. Insurance is *business*, and not elaborate and expensive trifling. Of course, what is in any degree material should be allowed its due effect; but the absolutely immaterial should count for nothing.

3. That the cost of building is not necessarily the value of a structure, must be obvious. 20 *Ga.*, 359, 367, 368.

4. The charge of the court may not have been accurate in every respect, but we think its positions were sound, in the main, and that, under the evidence and the law applicable thereto, the jury were well warranted in the verdict which they rendered.

Judgment affirmed.