THE ÆTNA INSURANCE COMPANY vs. SPARKS.

62  187
h111 626.

[This case was argued at the last term and the decision reserved. Justice Bleckley having been of counsel, Judge Pottle, of the northern circuit, was designated by the governor to preside in his place.]

1. Lost pleadings may be established instanter, and unless some legal objection to their establishment be made to appear to this court from the record, the order of the superior court thereon will not be reversed.

2. An action brought by one party for the use of another, may be amended by changing the usee or striking the usee out altogether.

3. An amendment to the effect that the insurance company absolutely declined to pay the loss stipulated for by the policy, and had thereby waived the preliminary proof provided for, on general demurrer to the declaration as amended, will be held to mean that the absolute refusal to pay was within the sixty days limited for such preliminary proof, as no subsequent refusal would work such a waiver, and the demurrer was properly overruled.

4. This court will not control the discretion of the superior court in refusing to continue the case on the ground of surprise on the part of counsel, when the alleged surprise was caused by the evidence of the agent of defendant, and the evidence of the party to the action disclosing the origin of her title to, or interest in, the property burnt, where no artifice or misrepresentation is used by such party to deceive the defendant.

5. Where newly discovered testimony consists of the evidence of the person who erected the house which was burnt, and occupied it immediately before the plaintiff, and such person resided at Newnan, within a few hours ride of the venue of the trial, and whose evidence was accessible to the defendant during the entire pendency of the suit, which had been pending eight or ten years, and where the remainder of said newly discovered evidence is that of the agent of defendant, who had been examined on the trial, and the court overruled the motion for a new trial therefor, this court will not interfere.

6. Charges of the court that the production in evidence of the policy, together with proof that the plaintiff was owner of the property insured; that the property was destroyed and lost *bona fide* by fire, within the time limited in the policy, with satisfactory proof of its value, and of a compliance with all the conditions required on the happening of loss or a waiver of the same, would, in the absence of a defense, entitle the plaintiff to a recovery, and if the plaintiff's case fails in any of these particulars, she cannot recover; and that every insurer has the right to prescribe regulations as to notice and

13

preliminary proof of loss, which must be substantially complied with by the assured: *Provided* the same are made known at the time of the insurance, and are not materially changed during the existence of the contract, but that an absolute refusal to pay waives a compliance with these preliminaries; and that if the loss occurred, and the defendant, or its authorized agent, had notice of the fact, and he viewed the premises, and an appraisement was agreed on or had, and the matter discussed, and papers prepared or presented relative to the loss, and these negotiations were terminated by an unconditional announcement from the defendant, or its agent, to the other party that defendant would not pay because of defect of title, or some point relative to assignment of the policy, and making no allusion to any other objection, this would amount to the absolute refusal to pay meant by the law, and would be a waiver by defendant of all conditions as to notice and preliminary proof of loss; are not illegal, but contain a clear statement of the law of the case at bar under the facts disclosed by the record.

7. The verdict is supported by the evidence, and not against the law of the case as made by the record. If the record be unintelligible or confused, it is the misfortune of the plaintiff in error, as the burden is on him to make the errors complained of apparent to this court.

Pleadings. Practice in the Superior Court. Amendment. Continuance. New trial. Insurance. Before Judge HILLYER. Fulton Superior Court. October Term, 1877.

At the trial of this case, Mrs. Mary Stanton (who became Mrs. Mary Sparks by a second marriage) was plaintiff, and the Insurance Company defendant. The record contains an apparently dual proceeding, or else two cases; there is a regular petition in Fulton superior court, with process, plea, etc., in the usual form; this was in favor of Mrs. Stanton for the use of Bridget Ennis, but was afterwards amended by striking the usee and leaving it in favor of Mrs Stanton against the company. The original papers in this case were lost, and copies established on motion. Another amendment was made, alleging refusal by the company to pay the policy sued on, whereby proof of loss, etc., was waived. The other case apparent in the record, or the other part of the same case, is a suit by Bridget Ennis against the same company, appealed to the superior court

from the county court. Whether these form one or two cases is not clear, nor how the appeal was remodeled into the assumpsit.

On the trial, the jury found for the plaintiff, $1,000.00, principal, with interest. Defendant moved for a new trial; it was refused provided plaintiff would write off one-half of the verdict, and defendant excepted.

The policy which formed the basis of the suit was issued by the defendant to J. J. Stanton, agent for his wife; it covered this and other property. This house was destroyed by fire within the time of insurance, and the suit was to recover under the policy, the amount of insurance on it being $1,000.00.

On the trial, Blanchard, the agent of defendant at the date of the insurance and loss, was sworn as a witness.

On the subject of the refusal of the company to pay, his testimony was as follows: "My estimate about the time when the company refused to pay this claim is indefinite. I can't tell whether it was sixty or ninety days, or more. I don't remember. When the papers were presented to me and were forwarded to the company, some correspondence passed between Bennett and myself, and after that I was notified. The notice was in letters, which were afterwards burnt up. These letters were written' and received by me about sixty or ninety days after the loss, I suppose. I reckon in about thirty days after the papers were sent on there was a question of title made in the controversy about the property. I gave notice that the company declined to pay, I think, to Stanton, and then Mrs. Ennis and Stanton's wife came to see me. The company refused to pay on the ground of objection to the title. I couldn't tell whether that was what was stated in the letters that were burnt up. I think there was a disagreement about Bridget Ennis having signed the appraisement. Objections were grounded on her being a stranger to the policy. I think there was some writing on the subject. There may have been other subjects. Q. Was the objection to payment solely on the question of

title ? A. I have no recollection of anything else. Q. You have no recollection of anything else being said on that point? A. My recollection is that that is all that was said on it; I am not certain.

Q. You stated that an objection was made on the ground that no submission could be made between Bridget Ennis and the company, as she was a stranger to the policy ?

A. My recollection is that this was the ground of objections. Upon this simple question letters passed, and they refused to pay. Papers were forwarded relative to the loss after fire occurred.

Q. State whether there were any objections on the part of the company to the award on the property ? A. The only objection was on the question of title; it was a long time ago, ten or eleven years ago, and that is the best of my recollection; I could not be positive. Q. Who made out the papers ? A. My recollection is that I did. I had blanks for this purpose. I don't swear to this fact. Q. You say you heard no objections except such as were made to the title ? A. My recollection is that there may have been others, but these are all that I remember. The policy was made to J. J. Stanton as agent for Mrs. Stanton, and the objection was that the appraisement was signed by Bridget Ennis. This point was made in the correspondence.

Mary (Stanton) Sparks testified : " At the date of the policy I was the wife of J. J. Stanton ; he died and I married Sparks, whose wife I now am, * * Capt. Lewis, who was, I suppose, an army officer, was doing government work, and he asked permission of my father to put the house there. He commenced to build it in June, 1863, and completed it in five or six months. Edwin Ennis, my father, owned the land. Lewis made no particular contract with my father, except that the house was to be put there, and he was to pay us so much per bushel for malt, and when he was through he could move the house. My father and I occupied it first after it was completed. I assisted my father. I had nothing to do with the contract with Lewis. I first

began to have a connection with the property in February, 1864; father's health got bad and I helped him. In July, when they were leaving Atlanta, Capt. Lewis wanted to take everything away that belonged to the government. Father would not let him take the malt until he had paid his debt. What he owed me was $1,000. He asked if I would take the house for the debt; he said he did not have the money to pay me. He said if I would take the house for the debt he would pay me. That agreement was made between Lewis and myself. I held the house under those terms until it was burnt," etc.

At the close of Mrs. Spark's testimony, defendant's counsel asked for a continuance on the ground of surprise. Counsel stated that the case had been brought on the idea that Mrs. Ennis could adopt the insurance which had been made, and a recovery be had for her; that he was surprised at the turn the case had now taken, and the new right set up. The continuance was refused, and this. was one of the grounds in the motion for a new trial.

Another ground was the newly-discovered evidence of Lewis, to the effect that he built the house on Ennis' land, and was a partner of his in the malt business; that just before the capture of Atlanta, he told Ennis and his daughter that they could have the house, but nothing was ever said about moving it from the land. There was also some evidence newly discovered from Blanchard, unnecessary to be set out.

Some question was made as to an assignment of the policy. It appears from the record that after the fire, Stanton, agent, made an assignment of the policy to Mrs. Ennis. The assignment is in general terms, but the consent of defendant's agent under which it was made was limited " to the extent of the property not burned."

For the other facts of this case, see the opinion.

HOPKINS & GLENN, for plaintiff in error, cited, on striking name of *cestui que use*, Code, §3480.

COLLIER & COLLIER; P. L. MYNATT, for defendant, cited as follows : Demurrer properly overruled, Code, §4251 ; 38 *Ga.*, 561.   On amendment, 43 *Ga.*, 354; Code, §§3486, 3487.   On continuance, 55 *Ga.*, 21 ; 57 *Ib.*, 448; Code, §3531.   On new evidence, Code, §3716 ; 42 *Ga.*, 472 ; 57 *Ib.*, 609 ; 39 *Ib.*, 706 ; 56 *Ib.*, 405.   Waiver of preliminaries by refusal to pay, 6 Paige, Ch., 583; 14 Md., 285 ; 4 Wait's Actions and Defenses, 80 ; Wood on Fire Ins., 726. Establishing lost papers, Code, §3980 ; 3 *Ga.*, 121.   Insurable interest, Code, §2795.   Failure to specify not vitiate policy, 58 *Ga.*, 251 ; Code, §§2803–2807.

JACKSON, Justice.

1. This case arose from a fire as far back as 1866.   There seems at one time to have been a suit by Bridget Ennis for this or some other loss in the county court, and counsel dispute in respect to the question, whether or not that is this original case, and whether it has become changed by some sort of amendment into the case before us, or whether this is a new case different from that ?   One thing can be gathered with certainty from this confused record, and that is, that the papers were lost at one time and copies thereof have been established under the Code, section 3980 ; and when the case, by the establishment legally of this copy, emerged from the rubbish of ten or twelve years' of change of counsel and loss of papers, it stood on the records of Fulton superior court as a suit brought by Mary Stanton for the use of Bridget Ennis to recover $1,000.00 for the destruction of her house by fire.   It is true, that the establishment of this copy declaration by the court is made one ground of the motion for a new trial, but the nature of the objection thereto, and whether or not at the time it was established any objection was made thereto, does not appear in the record at all.   We take it for granted, therefore, that the copy was legally established, as no valid opposition thereto is made apparent by the plaintiff in error.

2. It seems that the declaration thus established was

amended twice, and, as amended, it was demurred to. The first amendment struck out the name of Bridget Ennis as usee and left the suit to proceed in the name of Mary Sparks alone. It would seem that as the legal title is in Mary Sparks, this could be done—43 *Ga.*, 353, *Demington vs. Sparks.* Indeed, even if the original suit had been in the name of Bridget Ennis, it could have been amended by inserting Mary Sparks for the use of Bridget Ennis—Code, §3486. But the declaration, after a copy had been established, was further amended by inserting therein words to the effect that the insurance company had absolutely declined to pay the loss stipulated for by the policy, and had thereby waived the preliminary proofs provided for in the policy to be made after the fire; and the demurrer is put in argument here, upon the ground that the declaration does not allege that this refusal was made within the sixty days after the fire which are allowed for the making of such proofs. The demurrer was general, and, if well founded, had it been special and pointed out the particular point of objection, it might have been remedied by amendment. Besides, the effect and true intent thereof seems to be, that the refusal was within the time, inasmuch as the allegation is, that thereby the proofs were waived—these proofs having to be made in this time. At all events, we do not see that the declaration should have been dismissed on this ground, and we think that the court did not err in overruling the general demurrer.

3. So that we have Mary Stanton properly in court and suing for the destruction of this house by fire. When the hearing had progressed for some time, and the plaintiff's case had been presented to the jury by the evidence of Mr. Blanchard, who was the agent of the company when the house was insured, and by her own evidence, the defendant's counsel moved for a continuance on the ground of surprise at the testimony of Blanchard and of Mrs. Sparks, as is set out in the report of facts. So far as Blanchard's evidence is concerned, it is the evidence of the defendant's

own agent who made the contract on behalf of defendant, and the defendant should have known all about what he would swear; and, as to Mrs. Sparks' testimony, that which seems to have surprised counsel was, that she showed that she was the owner of the burnt house and how she acquired title thereto. So far as the record discloses, she was guilty of no fraud or concealment or other trick, whereby defendant misconceived whence she derived title to the house. The man who built the house and who had used it before she went into possession, in connection with her father, was accessible—in Newnan—a short distance from Atlanta—and might have been interrogated—and it was natural that he should have been—as to how he built it and to whom he transmitted his rights when he left Atlanta. It seems that there was want of diligence —see Code, §3528; 5 *Ga*, 75; 10 *Ga.*, 86, 403; and many other cases. Besides, continuances are in the discretion of the circuit court, and this court, even in cases where, if it were an original question it would have granted the continuance, will not control that discretion unless abused. We do not see such abuse here as requires our interference. Code, §3531; *Wilkinson vs. Smith,* 57 *Ga.*, 609; *Young vs. The State,* 56 *Ga.*, 405, 4th head of opinion.

4. The next ground in the motion for new trial is newly discovered evidence. That consists of the affidavit of Mr. Lewis, whose evidence was accessible and could have been procured, and this ground seems to fall with the last, lacking the support of that due diligence which the law requires. Besides, it rather confirms than overthrows the evidence of Mary Sparks, showing that in the main her statement is correct. It is true that he couples her father with the plaintiff in the gift or sale of the house, but as it is an *ex parte* affidavit, and as he fully confirms her about old Mr. Ennis objecting to the removal of the malt, on cross-examination, or refreshing his memory, he might have agreed, and probably would have with her.

Of course there is nothing in the point of newly dis-

covered evidence of Blanchard.  He was a witness on the stand and examined, and was, besides, the agent of the defendant.

5. The next ground is that the verdict was against certain portions of the charge.  The judge who made the charge did not think so, and as he gave it and heard the evidence we will not overrule his judgment, it not being clear to us that the verdict is so much against it as to be against law.

6. It is next said that the court erred in charging as follows:

1. "The production in evidence of a policy of insurance, such as described in the declaration, together with proof to the satisfaction of the jury that the plaintiff was owner of the property insured, that the property was destroyed, and a *bona fide* loss of the same by fire, within the time limited by the policy, with satisfactory proof of its value, and of a compliance with all the conditions required by the policy to be performed on the happening of loss, or of a waiver of the same, would, in the absence of a defense, entitle the plaintiff to a recovery.  If the plaintiff's case fails in any of these particulars she cannot recover.

2. "Every insurer has a right to prescribe regulations as to notice and preliminary proof of loss, which must be substantially complied with by the assured; *provided* the same are made known at the time of the insurance, and are not materially changed during the existence of the contract. An absolute refusal to pay waives a compliance with these preliminaries.  Code, §2813.

3. "If the loss by fire occurred, and the defendant, or its authorized agent, had notice of the fact, and he viewed the premises, and an appraisement was agreed on, or had, and the matter discussed, and papers prepared and presented relative to the loss, and these negotiations were interrupted, or terminated, by an unconditional announcement from the defendant, or its agent, to the other party that the defendant would not pay, because of want of, or defect of, title,

or some question relative to the assignment of the policy, and making no allusion to any other objection, this would be the absolute refusal to pay meant by the law, and would be a waiver by the defendant of all conditions as to notice and preliminary proof of loss."

We see no objection to these several charges. One of them is in the language of the Code, and all appear to us to be in accordance with law. See Code, sections 2803,2813.

7. There is no pretense that the house was not burnt, none that the plaintiff had aught to do with the fire, none that it was not worth the sum found by the jury, and the defense seems to us to have been, and to be, technical throughout. Blanchard, the Georgia agent, investigated Mrs. Sparks' title; was satisfied with it; told the company so, and the company insured the house. Within two days after the fire he was notified; the matters in dispute were left to arbitration; the loss was fixed at $1,000.00; the company refused to pay on account of title, or of the assignment of the policy, though the assignment even of the burnt-house part of the policy, was assented to by the company, according to defendant's position; the probabilities are strong that the refusal was within the sixty days fixed for proof of loss; no time was lost to communicate the fact of the burning to Blanchard, the defendant's agent; Mary Stanton (or Mary Sparks now), her husband, and Bridget Ennis, her mother, all notified the agent in person two days after the fire; the agent appears to have acted promptly in communicating with the company at its principal office; such was his duty, and if he did not it was not the fault of Mary Stanton and those interested with her; the corporation was foreign to Georgia, he was its agent, and notice to him was notice to the corporation, so far as the people of this state dealing with the corporation through this agent could be affected; the plaintiff, Mary Stanton, had an insurable interest; she certainly owned the house, according to the evidence before the jury, and she, with her father, got it from him, according to the *ex parte* affi-

davit of Lewis ; and her father may have given her his share, if he had any in reality ; the jury passed upon the question of ownership, and the evidence supports the verdict.

Some point was made that the plaintiff had assigned her interest in the policy to Bridget Ennis, her mother, and that for this reason she could not recover. But this assignment was made after the fire which consumed this house, the subject of this suit. Other property was covered by the policy ; and no assignment could be made without the assent of the insurer, and it assented only to the assignment so far as that not consumed was embraced in the policy.

It is objected, also, that the court erred in directing that the plaintiff should write off half the verdict, or a new trial would be granted. Unless entitled to an unconditional grant of a new trial, the defendant cannot complain of this order ; and we have seen that in our judgment, as in that of the circuit court, the defendant is not so entitled.

In conclusion, it is well to say again, that when a case has been brought to this court by a plaintiff in error, the onus is upon him to show from the bill of exceptions and the transcript of the record, error in the court below ; and if, on account of an obscure or confused record, or omissions therefrom, such error is not made apparent to us, we have no alternative but to affirm the judgment. Looking at this case from what we can see in this record, and ascertaining as well as we are able from it the truth of the case, we think that this plaintiff is entitled to recover upon this policy, and that there has been made to appear to us no such error in respect to the rulings or charge of the court as requires us to set aside the verdict and to remand the case for a new hearing. Code, §2795 ; 58 *Ga.*, 251.

Judgment affirmed.