## SCOTTISH UNION AND NATIONAL INSURANCE COMPANY *v.* STUBBS.

1. There was no error in admitting in evidence in the trial of an action against an insurance company a letter addressed by the plaintiff to an adjuster of the company, stating that a certain inventory was enclosed therein, this letter being relevant in connection with other facts to show that such inventory was in fact enclosed and sent in the letter.

2. Nor was there any error, on such a trial, in admitting in evidence another letter from the plaintiff to the adjuster, its contents having some relevancy upon the question as to whether or not a demand for payment had been made and refused, and also upon the question of the company's good faith in the premises.

3. A correct inventory of the goods in a storehouse which had been burned, made shortly before the fire, though not made by the insured, and though the goods did not belong to him at the time the inventory was made, it having been made by the person then owning the goods for the purpose of effecting a sale to the insured, was on such trial admissible in evidence as having some relevancy concerning the extent of the loss, and could be considered by the jury in fixing the amount of the same if upon the whole case they should find the company liable.

4. A clause in a fire insurance policy binding the assured to keep certain books and to preserve them at night in an iron safe, or keep the same in some place not exposed to a fire which would destroy the building in which the business of the insured was being conducted, and stipulating that in the event of failure to produce such books for the inspection of the company, the policy should be null and void, was a warranty on the part of the insured, and not a mere representation.

5. There being in the policy sued on a clause of the nature above indicated, and which is usually designated as the " iron safe clause," and it being a matter of dispute as to whether this clause was rightly in the policy or had been inserted therein by the fraud of the company's agent, it was error for the court, in charging upon the effect which should be given to this clause in case the jury should find that it constituted a part of the policy, to leave them to pass upon its materiality or to treat it as a merely incidental matter to be considered by them in connection with the subject of furnishing proofs of loss.

·6. For the reasons just indicated, several of the charges complained of were erroneous and misleading.

August 10, 1896.

Action on insurance policy. Before Judge Hardeman. Bibb superior court. November term, 1895.

The policy was dated March 14, 1894, and was made for a term of one year. The plaintiff alleged, that on April 24, 1894, the property so insured was wholly destroyed by fire; that the same was largely more valuable than the amount of the policy, and under the three quarter clause therein the company's liability, after deducting one quarter of the loss, amounted to $600; that the policy was taken out some time before the fire, but was not actually delivered into his hands until after the date of the fire, and before delivering it the company inserted therein, without his authority or consent, the printed slip styled the "iron safe clause" (see the opinion); that this clause is no part of the contract between him and the company, but on the contrary his agent notified the company at the time of taking out the policy that no iron safe clause was to be inserted, and that the plaintiff had no iron safe, and the company accepted the contract with the understanding and agreement that no such clause was to be inserted, and the attempt to make it a part of the contract without his consent and without his knowledge, after the fire occurred, was in the nature of a fraud upon him; that he has fully complied with all the

conditions of the policy, and the company has refused payment after proper demand, etc.

The grounds of the motion for a new trial assign error:

In admitting, over defendant's objection, that they were irrelevant, immaterial and prejudicial: (*a*) Letter from plaintiff to Prioleau (who was the adjuster employed by the defendant to investigate and report as to the loss), dated October 24, 1894, to wit: "Inclosed find inventory of stock taken March 1, 1894. In addition to this my trunk and contents were burned, which the minimum value would be $100. Of course the insurance company is not responsible for the trunk, and fixtures used in the store marked as such. After you have looked this other inventory over, return it to me. Hoping to hear from you at an early date," etc. (*b*) Letter from plaintiff to Prioleau, dated August 7, 1894, to wit: "I have been waiting for some time, and can't hear anything whatever. I would like to know what you are going to do in regard to the matter; if you are not going to do anything, I would like to know so I can do something. I don't think I have been treated right in the matter. I was compelled to do something after losing everything I had. I have been put out of two positions by having to wait on you. I will only wait a few days longer; if nothing is done, I will have to turn it over to some one else. So write me at once or wire me at 660 Poplar street, Macon."

In admitting the inventory referred to in the testimony of plaintiff, of Renfroe, and of Prioleau, which was an enumeration of the articles of merchandise with values attached, with no aggregate amount summed up, but with footings at the bottom of each page. Defendant objected that it was not an inventory of the stock at the time of the loss nor an inventory made by the plaintiff, nor such an inventory as was contemplated by the policy or under the law as sufficient and proper to be used in a settlement of any claim under the policy. (It would seem that this in-

ventory was one prepared by Renfroe about the time the stock of goods was sold by Renfroe to plaintiff, Renfroe testifying that it was correct at that time, and that at the time of the fire the stock of goods had undergone but little change.)

In giving the following instructions to the jury:

"You will look into the facts and see whether he has failed to comply with that; did he keep a safe or did he keep the books away from the building; if not, was it material that he should have had a safe? I mean by that, has the company been put to an extra hazard thereby, or an extra trouble by reason of his not keeping this safe; in other words, is it material to this particular case? I will leave that for you to say whether it has increased their risk, or whether it has increased their liability. I charge you in that connection, if the company received the proof of loss without objections, if they kept that proof of loss an unreasonable time, simply declining to make a payment, why then it would not be necessary that he should have kept them in a safe, unless it was necessary for them to go into the facts to see whether he had suffered the loss claimed or not, the amount of the loss.

"If any misstatements were made or any violation of that policy, in order that it should violate the policy it must change the nature and extent or character of the risk, else it will not; a variation or misstatement that would not change the liability of the company would not release them from liability.

"I charge you that the keeping of these books would be a question that goes to the proof of loss; that the keeping of them in a safe was a matter, was a regulation prescribed by the company, that should go as to the proof of loss so that it may be seen what the loss was, and the company had a right to prescribe those stipulations, and the assured, Stubbs, must have substantially complied with it; provided,

however, these conditions were made known at the time of the insurance.

"If they were, Stubbs is bound by them, unless you should find that the company made an absolute refusal to pay; if they absolutely refused to pay upon a demand being made upon them for payment, then the law says that waives a compliance with that preliminary. In other words, when Stubbs made out his proof of loss, if they refused point-blank to pay, refused absolutely to pay, simply say, we won't pay, and it was not on the ground that the proof of loss was not sufficient, but generally they were not liable, then that would amount to a waiver of whatever was necessary in the way of carrying out the regulations as to the mode of proof.

"I charge you that the effect of said clause, taken in connection with the other provisions of the policy, is to require the plaintiff to produce his books and inventories for inspection of the company as often as the company may require. The burden is upon the defendant company to show that the defendant called upon the plaintiff to produce his set of books and inventories for the defendant's inspection, and upon being so called upon plaintiff failed to produce said books and inventories; and in that connection I charge you, if however they declined absolutely to pay and denied all liability, then that was a waiver of that on the part of the company, showing that the plaintiff would not have to produce his books.

"I charge you further, if you should find from the evidence that at the request of the defendant or its adjuster the plaintiff furnished an inventory of his stock for the inspection of the defendant, and the defendant made no objection to said inventory and received it, and he made no further request for the production of said books, that such condition may be considered by you as amounting to a waiver of the company's right to require the production of the books as well as the production of said inventory. If

an inventory was made out with the proof of loss, and the company took it and kept it an unreasonable time and made. no objection to it, you might say that was a waiver of the right of the company to have the books produced.

"In other words, as I charged you already on the subject of about whether that requirement that he should keep the books in a safe, whether that was material in the nature of its showing a greater liability to loss or greater hazard, or whether it was simply a question as to being a method of proof, if you should find from the evidence in the case that the iron safe clause was a part of the policy under the rules of law given you in charge by the court, you would be authorized to consider the further question whether or not the provisions thereof have been waived by the defendant. You may consider the defendant's conduct after the fire in retaining the proofs of loss, if you believe the same were retained by the defendant, and in putting the plaintiff to trouble and expense, if you believe that to be a fact, in determining the question whether or not there has been a waiver of defendant's right to treat the policy as null and void by reason of any act on plaintiff's part before the fire occurred, and known to defendant at the time said acts were done."

*Dessau & Hodges*, for plaintiff in error.
*Steed & Wimberly*, contra.

SIMMONS, Chief Justice.

This was an action upon a policy of fire insurance on the plaintiff's stock of merchandise, consisting principally of groceries and provisions, while contained in a one-story frame shingle-roof building occupied as a store, near Macon, Ga.    The policy stated that the property was insured "subject to iron safe clause attached"; also that it was accepted subject to such conditions as might be endorsed thereon or added thereto; and upon its face was pasted a strip of paper, which bore the signature of the agents who

issued the policy, and upon which was printed the "iron safe clause." This clause is in these words:

"The following covenant and warranty is hereby made a part of this policy: (1) The assured shall make a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve months prior to the date of this policy, one shall be taken in detail within thirty days of the issuance of this policy, or this policy shall be null and void from such date, and upon demand of assured the unearned premium from such date shall be refunded. (2) The assured shall keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in the first section of this clause and during the continuance of this policy. (3) The assured shall keep such books and inventory, also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or failing in this, the assured will keep such books and inventories in some places not exposed to fire which would destroy the aforesaid business. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The property insured was burned at night, after the store was closed. The plaintiff's books of account were not placed in a safe, but were left in the store, on a desk, where they were destroyed by the fire. The insurance company refused payment of the policy, and in its answer to the action denied liability, upon the ground that the plaintiff had violated the clause above referred to. The plaintiff contended that the clause in question was not a part of the contract, but was attached to the policy without his consent and by the fraud of the defendant's agents. On this point the evidence was conflicting. There was a verdict for the plaintiff for the full amount of the policy, and the defend-

ant made a motion for a new trial, which was overruled, and is excepted.

1-3. As to the admissibility of the letters and inventory referred to in the motion for a new trial, nothing need be added to what is said in the head-notes.

4-6. The court, in charging upon the effect which should be given to the "iron safe clause" in case the jury should find that it constituted a part of the policy, submitted to them the question of its materiality, and authorized them to treat it as a merely incidental matter to be considered by them in connection with the subject of furnishing proofs of loss. This we think was error. The provisions of our code touching the materiality of representations and conditions in fire insurance policies (§2803 *et seq.*), and the decisions of this court in the cases of *Southern Life Insurance Co.* v. *Wilkinson*, 53 *Ga.* 549; *Mobile Fire Department Insurance Co.* v. *Coleman & Collat*, 58 *Ga.* 251, and *Phenix Insurance Co.* v. *Fulton*, 80 *Ga.* 224, relied upon by counsel for the defendant in error, relate to representations of fact, and not to conditions of the kind contained in the clause now under consideration. This clause constitutes a promissory warranty. It binds the assured to do certain things for the protection of the insurer, and is important as providing a check against fraud on the part of the assured, and a mode by which the insurer may ascertain for itself the extent of the loss; and the compliance of the assured with this part of the contract is a condition upon which, by the express terms of the contract, the validity of the policy is made to depend. As to such warranties our code made no departure from the rules of law governing contracts of this class, as laid down by the authorities generally; and according to all the authorities, the materiality of such a warranty is not a matter of inquiry for a jury. 11 Am. & Eng. Enc. of Law, Insurance, 291; 1 May Ins. §156; and see *Thomson* v. *Southern Mutual Insurance Co.*, 90 *Ga.* 78. In the following cases an "iron safe

clause" was held to be a warranty, and not a mere repre-
sentation: Landman *v.* Hartford Ins. Co., La. Court of
App. (1890), 19 Ins. L. J. 572; Kelly-Goodfellow Shoe
Co. *v.* Liberty Ins. Co. (Tex. Civ. App.) S. W. Rep. 1034;
Home Ins. Co. of New Orleans *v.* Cary (Tex. Civ. App.),
31 S. W. Rep. 321; Virginia Fire & Marine Ins. Co. *v.*
Morgan (Va.), 18 S. E. Rep. 191.    *Judgment reversed.*