## SOUTHERN FIRE INSURANCE CO. *v.* KNIGHT.

1. Where a policy of fire insurance set forth various requirements and conditions a violation of which by the insured would operate as a forfeiture of the policy, and the same also contained a stipulation requiring the insured to furnish proofs of loss within sixty days after the fire, but did not make failure to do so a ground of forfeiture, and where under the terms of the policy the insurer was not liable to make payment until after sixty days from the receipt of such proofs of loss, the policy further providing that no suit thereon should be brought unless commenced within twelve months after the fire: *Held*, that if the insured furnished the required proofs of loss in time for at least sixty days to elapse between the date upon which they were furnished and the expiration of the twelve months limitation, the policy was not forfeited by a failure to furnish such proofs within sixty days after the fire occurred.

2. "An invoice of goods purchased is not an inventory of stock to be produced under the 'iron-safe clause' of a fire policy."

3. A policy of fire-insurance the consideration for which is a premium payable in a gross sum is entire and indivisible, though the contract insures

different classes of property in separate amounts. It follows from this that where such a policy insured both a building and a stock of merchandise therein contained, and provided that in the event the insured failed to take an inventory of the goods at a time specified "this policy shall be null and void from such date," a breach of this stipulation avoided the insurance on the building as well as on the stock of goods. LITTLE, J., dissenting.

4. The plaintiff's testimony showing affirmatively that they had failed to comply with the stipulations mentioned in the foregoing note, a motion to nonsuit should have been sustained.

Argued June 11, — Decided July 10, 1900.

Action on insurance policy. Before Judge Calhoun. City court of Atlanta. September term, 1899.

*W. I. Heyward,* for plaintiff in error.
*James K. Hines,* contra.

COBB, J. M. A. & L. L. Knight brought suit against the Southern Fire Insurance Company upon a policy of fire-insurance. The case came on for trial, and at the conclusion of the testimony for the plaintiffs the defendant made a motion for a nonsuit, which the court overruled. The case proceeded to trial, and resulted in a verdict for the plaintiffs. The defendant brings the case here upon a bill of exceptions assigning error upon the refusal of the court to grant a nonsuit.

1. The policy which was the foundation of the action contained a clause which provided that "if fire occur, the insured shall give immediate notice of any loss thereby, in writing, to this company, . . and within sixty days after the fire, unless such time is extended in writing by this company, shall " furnish proofs of loss of a designated character. While it appears from the evidence that proofs of loss had been submitted to the company before suit was brought, they were not submitted until after the expiration of sixty days from the date of the fire, and the time for their submission was not extended by the company. The defendant contends that the failure on the part of the insured to furnish the proofs of loss within the time specified in the policy precludes a recovery thereon. It has been often held, and may now be considered as settled law, that if there is an express stipulation in a policy of fire-insurance that the furnishing of proofs of loss within a specified time shall be a condition

precedent to a recovery, or that a failure to submit the proofs within the time limited in the policy shall forfeit the same, such failure on the part of the insured will be fatal to his right to recover.    See 13 Am. & Eng. Enc. L. (2d ed.) 328, notes 7 and 8.    There is not in the policy involved in the present investigation either a stipulation that the furnishing of proofs of loss within. sixty days shall be a condition precedent to a recovery, or that the failure so to do shall operate as a forfeiture of the policy.    While the decisions of the American courts are not entirely uniform on this question, the current of authority seems to be that in the absence of a stipulation providing that the furnishing of the proofs within a designated time shall be a condition precedent to recovery, or that the failure to submit the proofs within such time shall work a forfeiture of the policy, the failure so to do will operate simply to postpone the right of the insured to bring a suit until after he has furnished the proofs of loss required by the policy.    This results from the familiar rule that forfeitures are not favored, and that a contract will not be construed to work a forfeiture unless it is manifest that it was the intention of the parties that it should have that effect.    Especially would this be applicable in the case of a contract of insurance which contains many conditions a failure to perform which are expressly stated to operate as a forfeiture of the contract, and which is silent as to the effect to be given to a failure to perform the condition relating to the furnishing of proofs of loss within a specified time.    The policy is prepared by the insurer, and therefore must be construed most strongly against him.

Mr. Joyce in his work on Insurance, vol. 4, § 3282, thus states the rule with reference to the failure to furnish the required proofs within the time designated : "If a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose forfeiture for a failure to comply with other provisions of the contract, the insured may, it is held, maintain an action, though he does not furnish proofs within the time designated, provided he does furnish them at some time prior to commencing the action upon the policy.    And

this has been held to be true even though the policy provides that no action can be maintained until after a full compliance with all the requirements thereof." The above quotation and the decision made in the present case will be found to be supported by the following cases: Steele v. German Ins. Co. (Mich.), 18 L. R. A. 85, s. c. 53 N. W. Rep. 514; Hall v. Concordia Ins. Co. (Mich.), 51 N. W. 524; Tubbs v. Dwelling-House Ins. Co., 84 Mich. 646; Rynalski v. Ins. Co., 96 Mich. 395; German Ins. Co. v. Brown (Ky.), 29 S. W. Rep. 313; Vangindertaelen v. Phenix Ins. Co., 82 Wis. 112, s. c. 33 Am. St. Rep. 29, 51 N. W. Rep. 1122; Flatley v. Phenix Ins. Co., 95 Wis. 618; Kahnweiler v. Phœnix Ins. Co., 57 Fed. Rep. 562; Kenton Ins. Co. v. Downs, 90 Ky. 236, s. c. 13 S. W. 882; Coventry Ins. Co. v. Evans, 102 Pa. St. 281; Taber v. Royal Ins. Co. (Ala.), 26 So. 252; Rheims v. Standard Ins. Co., 39 W. Va. 672; Shell v. German Ins. Co., 60 Mo. App. 644; Sun Mutual Ins. Co. v. Mattingly, 77 Tex. 162.

It not being indispensable to a recovery on the policy that the proofs of loss should be submitted within sixty days, the question arises as to what lapse of time will preclude the plaintiffs from furnishing proofs of loss and asserting a liability under the policy. The answer to this is, that if the plaintiffs failed within a reasonable time after loss to furnish the proofs of loss, their right to make the proof would be gone and their right to recover on the policy would consequently be at an end. What would be a reasonable time is to be determined by the peculiar facts of each case; and in determining this question a valid stipulation in the policy, that no suit should be brought thereon after the lapse of a given time, should be taken into consideration. The policy sued on in this case provides that "no suit or action on this policy for a recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements nor unless commenced within twelve months after the fire." A stipulation of this character has been held by this court to be valid. *Brooks* v. *Ga. Home Ins. Co.*, 99 *Ga.* 116, and cases cited; *Graham* v. *Ins. Co.*, 106 *Ga.* 840. The policy contains a further stipulation that "the loss shall not become payable until sixty days after the" proofs of loss have been

furnished. As each of these stipulations is valid, the insured must, in any event, have submitted their proofs of loss in such a time that at least sixty days would elapse between the date of the submission of such proofs and the time that suit should be brought under the stipulation that suits to enforce the policy must be brought within twelve months from the date of the fire. In this connection see Steele *v.* German Ins. Co., supra; Kenton Ins. Co. *v.* Downs, supra; Coventry Ins. Co. *v.* Evans, supra; Rheims *v.* Standard Ins. Co., supra. The proofs in the present case having been submitted more than sixty days before the expiration of twelve months from the date the fire occurred, the court properly refused to grant the nonsuit on account of a failure to submit the proofs within the time fixed in the policy, as it was a question for the jury whether a reasonable time for furnishing the proofs had elapsed between the date the fire occurred and the date that the proofs of loss were submitted. This ruling is not in conflict with any former decision of this court. A number of decisions of this court can be found where the court dealt with the case as if the failure to submit proofs of loss within the time specified in the policy would preclude a recovery thereon, and there are, in the language used in some of the opinions, expressions which would indicate that the judges writing the same entertained the view that such a failure would bar a right of recovery; but a careful examination has failed to disclose any case decided by this court where this question was squarely presented for decision and necessary to be decided. Some of these decisions which are apparently in conflict with the ruling now made will be referred to, as well as others which are apparently in line with the present ruling, although, as has been said, none contain authoritative rulings on the question.

In *Ætna Ins. Co.* v. *Sparks*, 62 *Ga.* 187, it was held that an amendment to the petition sufficiently alleged, as against a general demurrer, that an absolute refusal to pay was within the time limited for preliminary proof of loss; it being stated that no subsequent refusal would operate as a waiver of such proof. In speaking of the amendment, Mr. Justice Jackson says: "Besides, the effect and true intent thereof seems to be that the refusal was within the time, inasmuch as the allegation is that

thereby the proofs were waived — these proofs having to be made in this time." It having been held that the allegation was that the refusal was within the sixty days, it was not necessary in that case to determine what would have been the effect of a refusal after sixty days, and therefore what was said on that subject is clearly obiter. In addition to this, an examination of the record in that case discloses that there was no time specified in the policy in which preliminary proofs must be submitted. The only reference in the policy to the phrase "sixty days" is that the policy shall not be payable until sixty days after notice and proof of loss; and the policy in terms provided that the proof of loss should be furnished "as soon as possible" after the fire. While in *Merchants' Ins. Co.* v. *Vining*, 67 *Ga.* 661, the question now under consideration was not at all involved, some language of Mr. Chief Justice Jackson rather indicates that the ruling now made is correct. In referring to the two policies then under consideration, he says, in substance, that, even if nothing equivalent to an absolute waiver had occurred, there was nothing in the policies which required their forfeiture on account of failure to furnish preliminary proofs of loss. In *Southern Home B. & L. A.* v. *Home Ins. Co.*, 94 *Ga.* 167, Mr. Justice Simmons, in referring to a stipulation in reference to preliminary proofs of loss, says: "It was a condition precedent to the payment of the loss, that the proof of loss stipulated for should be made out and submitted to the insurance company and within the time stipulated." The question as to whether the time stipulated in the policy was of the essence of the contract was not at all involved in that case; the sole question being whether a stipulation in a policy of fire-insurance which declares, in substance, that no act or neglect on the part of the mortgagor would defeat the insurance so far as the interest of the mortgagee was concerned, would dispense with the making of proofs of loss. In that case it did not appear that any proofs of loss were submitted by either the mortgagor or the mortgagee, and it was simply held that the proofs of loss must have been submitted by either one or the other.

In *Liverpool Ins. Co.* v. *Ellington*, 94 *Ga.* 785, 788, Mr. Justice Simmons says: "One of the conditions of the policy declared upon was, that if the property should be destroyed by fire, the insured should furnish the insurance company with

proofs of loss within a specified time." The question as to the effect of the failure to furnish proofs within the time specified was not involved in that case, as, upon an examination of the facts of the case, it will be seen that it turned upon the effect of an absolute refusual to pay, which was held to waive the necessity for making any proofs of loss at all. In *Phenix Ins. Co.* v. *Searles*, 100 *Ga.* 97, it was held: "A statement made by such an agent to the insured, within the time during which the latter, under the terms of the policy, was allowed to furnish proofs of loss, that the company declined or refused to pay the loss, will amount to a waiver of such proofs; but where proofs of loss were not furnished within the time stipulated, a subsequent refusal to pay would not be such a waiver." The question as to whether a failure to furnish the proofs of loss within the time specified in the policy would work a forfeiture of the policy was not directly raised in that case, and the decision was based merely upon the assumption that such was the law. In addition to this, as will appear from the language in the 5th headnote, the policy was construed as meaning that a failure to furnish the proofs within the time limited would vitiate the policy, which would make the decision directly in line with the present ruling ; but the facts will show that this was not a proper construction to be placed upon the policy, as the language used in the policy in that case was exactly the same as the language in the policy involved in the present case. The case of *Graham* v. *Niagara Ins. Co.*, 106 *Ga.* 840, does not conflict with the ruling made in the present case; it being simply held that when a policy stipulated that no suit should be brought thereon unless commenced before the expiration of twelve months from the date of the loss, and that the company should have sixty days after due notice and satisfactory proof of loss to pay the policy, there could be no recovery on such a policy when no notice of loss was given until such a time that sixty days would not elapse between the date of the notice and the expiration of the time for bringing suit on the policy. While not directly in point, the reasoning of the decision is in line with the reasoning upon which the present ruling is based.

2. The policy sued on contained what is commonly called

the "iron-safe clause." That part of the clause which is material to the present investigation is in the following language: "The following covenant and warranty is hereby made a part of this policy: 1st. The insured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned." "In the event of failure to produce such . . inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon." It appears from the plaintiffs' testimony that they had not taken an inventory of the stock of goods which was covered by the policy within twelve months prior to the date of the policy, nor did they take one within thirty days after the date of its issuance. The plaintiffs introduced evidence tending to prove that the insurance was written on the very first day that they opened their store, and that they had on hand that day the invoices representing all purchases made by them, and that every article contained in the invoices was on that day in the store, and that they exhibited such invoices to the agent of the company who wrote the policy. It is contended by the plaintiffs that this was at least a substantial compliance with that portion of the iron-safe clause which required an inventory, and that, as loss occurred within less than twelve months from the date the policy was written, they are not precluded from recovering on the policy merely because they failed to take an inventory within thirty days. A clause of the character designated in the policy as the "iron-safe clause" has been held by this court to be valid, and to constitute a warranty and not a mere representation. *Scottish Union Co.* v. *Stubbs*, 98 *Ga.* 754. In the opinion in that case Mr. Chief Justice Simmons uses this language: "This clause constitutes a promissory warranty. It binds the assured to do certain things for the protection of the insurer, and is important as providing a check against fraud on the part of the assured, and a mode by which the insurer

may ascertain for itself the extent of the loss; and the compliance of the assured with this part of the contract is a condition upon which, by the express terms of the contract, the validity of the policy is made to depend." The precise question presented for decision is whether a collection of invoices covering every article embraced within a stock of merchandise on a given-day is an inventory of such stock within the meaning of the clause above quoted. In other words, was the insurer bound to treat these invoices, when exhibited to it, as an inventory of the goods?

An inventory is "an itemized list of the various articles constituting a collection, estate, stock in trade, etc., with their estimated or actual values." Black's Law Dictionary. It is a "list, schedule, or enumeration in writing, containing, article by article, the goods and chattels, rights and credits, and, in some cases, the land and tenements, of a person or persons." Bouvier's Law Dictionary. "An itemized list of goods or valuables, with their estimated worth; specifically the annual account of stock taken in any business." Webster's Dictionary. "A list or catalogue of goods and chattels, containing a full, true, and particular description of each, with its value, made on various occasions, as on the sale of goods, decease of a person, storage of goods for safety, etc." Encyclopædic Dictionary. Invoice has been defined to be: "A statement on paper concerning goods sent to a customer for sale or on approval. It usually contains the price of the goods sent, the quantity and the charges upon them made to the consignee." Encyclopædic Dictionary. "A list or account of goods or merchandise sent or shipped by a merchant to his correspondent, factor or consignee, containing the particular marks of each description of goods, the value, charges, and other particulars." Black's Law Dictionary. "A list sent to a purchaser, factor, consignee, etc., containing the items, together with the prices and charges, of merchandise sent or to be sent to him." Standard Dictionary. A single invoice is certainly not an inventory, and it would seem to follow that a collection of invoices would not be an inventory. It may be that a collection of invoices, accompanied with a written statement signed by the insured that the invoices embraced every article in the store and the actual value of each, would be a sub-

stantial compliance with the stipulation in the policy; but be this as it may, we are clear that the invoices alone are not sufficient. It is too late at the trial for the insured to show that the invoices contained all of the goods with the actual value of each article, for the obvious reason that the insurer would have a right to decline to receive the invoices as a proper compliance with the terms of the policy, and this of course is the true test as to their sufficiency. An invoice is simply a writing showing the articles sold, with the selling price of each. This may vary greatly from the actual value of the articles. That property, including merchandise, is often bought and sold at prices which do not at all represent the actual value is a well-known fact. The invoice price of an article is a circumstance to be considered in determining what is its actual value, but it is far from conclusive on the question. To take an inventory, in common parlance, is "to take stock," that is to say, take an itemized list of every article in the store at the time of the inventory, with the actual value of each. The Supreme Court of Mississippi had before it a similar question, and from that decision the second headnote preceding this opinion is taken. Home Ins. Co. v. Delta Bank, 15 So. Rep. 932. Upon a careful examination of the facts of Roberts v. Sun Mutual Ins. Co. (Texas), 48 S. W. Rep. 559, the ruling there made will be found also to support the decision in the present case. The failure of the plaintiffs to take an inventory as required by the policy prevents a recovery by them, at least so far as the right to recover the value of the merchandise lost by the fire is concerned.

3. The policy sued on in the present case insured both the stock of goods and the building in which it was contained. The premium due upon the policy was a gross sum. The question arises, therefore, whether the breach of a warranty relating solely to the goods, and which precluded a recovery for their loss, would also bar a recovery for loss of the building. The stipulation prescribing that the insured must take an inventory of his stock provides that in case of failure so to do " this policy shall be null and void." What was the intention of the parties with respect to the question just above stated? If this intention is to be derived from the language used, and it must be, it would seem to be clear that the contract was entire and

indivisible, and that the breach of a condition which would work a forfeiture would avoid the entire policy, and not simply a portion thereof. The parties contracted that "the policy" should be void in case of failure to comply with the iron-safe clause. The policy embraces insurance upon both the building and its contents, and the premium is payable in a gross sum. "If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items." 2 Parsons, Con. *519. It was competent for the parties to make two separate and distinct contracts, one covering the goods, and the other the building; but they did not see proper to do this. They combined the two and made the consideration moving toward the insurer a gross sum. They further provided that the *contract*, not a *part* of it, should be void under certain conditions. It may perhaps seem to be unreasonable that simply for a failure to take an inventory of the stock of goods the plaintiffs should be precluded from recovering the value of the building. But this does not affect the question. The question is, what have they agreed upon? If there was any room to doubt as to the intention of the parties, that construction which is most reasonable and most consonant with justice would be applied. But there is none. The parties have deliberately chosen to enter into an agreement whereby the policy shall be forfeited if the insured fails to do certain things; and he has failed to comply with this agreement. In such a case there is but one thing for the courts to do, and that is, to enforce the agreement as made.

The question as to whether a policy of insurance such as is involved in the present case constitutes a separable or an entire contract is no new question. It has been the subject of numerous decisions by the courts in this country, and they are in hopeless and irreconcilable conflict. The weight of authority is to the effect that the contract is entire, and that the breach of a warranty. which relates solely to one class of property will avoid the entire policy, if the contract so provides. Text-writers of great learning and ability have, after reviewing the decisions on both sides of this question, reached the conclusion that the contract is indivisible. We quote the following from

1 Wood on Fire Insurance, 384: "It is difficult to understand how it can be held that these contracts are several, when a gross premium is paid for the entire insurance. The court can not say, as a matter of law, neither can the fact be shown, that the insurer would have been satisfied to take the risk separately at the same premium. By consenting to pay a gross premium for the insurance the assured has signified his willingness to let the policy stand as an entire contract, subject in all its parts to the conditions imposed by the insurer, and there is neither reason nor equity in preventing [?] the assured after he has violated one of the conditions of the policy as to a part of the risk, to turn around and say that this condition only affected that portion of the risk to which the breach related." Mr. Ostrander, after an elaborate review of the decisions, reaches the conclusion that those which hold the contract to be entire announce the sounder and better rule. Ostrander, Fire Ins. § 23 et seq. See also 2 Joyce, Ins. § 1931; 1 May, Ins. § 277. In support of the views herein announced we find the courts of last resort of Maine, Wisconsin, Maryland, Minnesota, Virginia, New Hampshire, Massachusetts, Vermont, Pennsylvania, New Jersey, Michigan, Indiana, Arkansas, Iowa, Alabama, and Connecticut. It would not be profitable here to do more than cite the decisions of these courts. Reduced to their last analyses, they simply hold that the premium being for a gross sum evidences an intention on the part of the parties that the contract should be treated as entire, and that the intention of the parties, when ascertained, must be enforced. See Richardson v. Ins. Co., 46 Me. 394; Barnes v. Ins. Co., 51 Me. 110; Hinman v. Ins. Co., 36 Wis. 159 (7); Burr v. Ins. Co., 84 Wis. 76, s. c. 36 Am. St. Rep. 905; Associated Firemen's Ins. Co. v. Assum, 5 Md. 165; Bowman v. Ins. Co., 40 Md. 620; Plath v. Ins. Co., 23 Minn. 479; Moore v. Ins. Co., 28 Gratt. 508; Baldwin v. Ins. Co., 60 N. H. 422; Friesmuth v. Ins. Co., 10 Cush. 587; Lee v. Ins. Co., 3 Gray, 583; Kimball v. Ins. Co., 8 Gray 33; McGowan v. Ins. Co., 54 Vt. 211; Gottsman v. Ins. Co., 56 Pa. St. 210; Trustees v. Williamson, 26 Pa. St. 196; Martin v. Ins. Co. (N. J.), 31 Atl. Rep. 213; Ætna Ins. Co. v. Resh, 44 Mich. 55; McQueeney v. Ins. Co. (Ark.), 12 S. W. 498; Garver v. Ins. Co. (Iowa), 28 N. W. 555; Western

Ass. Co. *v.* Stoddard (Ala.), 7 So. Rep. 379 (5); Essex Sav. Bank *v.* Ins. Co. (Conn.), 17 Atl. Rep. 930.

It is true that none of the cases above cited dealt with a breach of the iron-safe clause, but in many of them the condition in the policy which was violated had no more connection with the property for which a recovery was sought than does the iron-safe clause to the building insured by the policy herein involved. In principle the cases are exactly in point. Opposed to this view are decisions of the courts of last resort of Nebraska, Colorado, Kansas, and Missouri. See State Ins. Co. *v.* Schreck (Neb.), 43 N. W. Rep. 340; German Ins. Co. *v.* Fairbank (Neb.), 49 N. W. Rep. 711; Fireman's Fund Ins. Co. *v.* Barker (Col.), 41 Pac. Rep. 513; German Ins. Co. *v.* York (Kan.), 29 Pac. Rep. 586; Kansas Farmers' Fire Ins. Co. *v.* Saindon (Kan.), 36 Pac. Rep. 983; Loehner *v.* Home Mutual Ins. Co., 17 Mo. 247; Trabue *v.* Dwelling-House Ins. Co. (Mo.), 25 S. W. Rep. 848. The courts of New York and Indiana seem to have been at different times on both sides of the question now under consideration. Smith *v.* Empire Ins. Co., 25 Barb. 497; Kiernan *v.* Ins. Co., 30 N. Y. Supp. 892; Merrill *v.* Ins. Co., 73 N. Y. 452; Pratt *v.* Dwelling-House Ins. Co. (N. Y.), 21 Ins. Law J. 146; Havens *v.* Ins. Co. (Ind.), 12 N. E. Rep. 137; Phœnix Ins. Co. *v.* Pickel (Ind.), 21 N. E. Rep. 546. Our conclusion is, that where an insurance policy is issued in consideration of a gross premium, and provides that the policy shall be void in the event of a breach of a certain condition therein named, and this condition is broken, no recovery can be had on the policy, though separate classes of property are therein insured, and though the stipulation violated relates solely to a matter which could have no connection with but one of these classes.

4. As it affirmatively appeared from the evidence offered by the plaintiffs that they had broken one of the warranties in the policy, and as the breach thereof avoided the policy by an express provision in the same, the motion to nonsuit should have been sustained.

*Judgment reversed. All the Justices concurring, except*

LITTLE, J., dissenting. Not being able to agree to the conclusion of law expressed in the third headnote, I dissent from the judgment rendered by a majority of the court.