DAVID COHEN vs. THE HOME INSURANCE COMPANY, a corporation of the State of New York.

1. INSURANCE—CONTRACT—WHAT LAW GOVERNS.
Where a fire policy is delivered and countersigned by an agent in the State of Maryland, the Maryland law governs.

2. INSURANCE—FIRE INSURANCE—WHAT LAW GOVERNS.
In determining liability under a Maryland contract of insurance, the courts of a foreign state will, where the Maryland courts have not passed on the matter, apply the general law, though as to matters passed on, Maryland decisions govern.

3. INSURANCE—FIRE INSURANCE—POWERS OF AGENT.
A countersigning agent with authority to deliver policies and collect premiums has the legal power and authority to waive by parol provisions in a fire policy with respect to conditions existing prior to or at the time the policy is delivered, which are by the terms of the policy made the subject of agreement between the agent and insured.

4. INSURANCE—FIRE INSURANCE—NOTICE TO AGENT.
Notice to a countersigning agent with respect to matters subject to agreement between the agent and the insured is notice to the company.

5. Insurance—Fire Insurance—Countersigning Agent.

A countersigning agent authorized to deliver policies and collect premiums cannot, after delivery, and before loss, waive by parol an iron-safe clause in the policy.

6. Insurance—Fire Insurance—Provisions—Estoppel.

Where, after delivery of a fire policy containing an iron-safe clause, insured asked the agent who countersigned, delivered the policy and received premiums, what was meant by the clause, stating that he had no safe, and was assured that it was intended only for dishonest persons, the company is not, a loss having occurred, estopped to set up insured's failure to comply with such clause.

7. Insurance—Fire Insurance—Breaches.

A countersigning agent who delivers a policy cannot waive future breaches.

8. Insurance—Fire Insurance—Breach of Condition.

The holder of a fire policy which required the taking of an inventory in thirty days, if one had not been taken within twelve months past, must, in order to recover on such policy, take an inventory within the time stipulated.

9. Insurance—Fire Insurance—Iron-safe Clause—Compliance With.

Where a fire policy on a stock of goods required insured to keep his books in an iron safe or a place of safety, it was not a substantial compliance with the policy for insured to keep an inventory in a place of safety, where the other books were incomplete consisting principally of loose sheets of paper showing cash receipts, and there were no books showing purchases of goods and sales.

(*June* 5, 1916.)

Judges Rice and Heisel sitting.

*Robert H. Richards* and *Aaron Finger*, also *T. Allen Goldsborough* of Maryland, *pro hac vice*, for plaintiff.

*Richard S. Rodney* (of *Saulsbury, Morris and Rodney*), also *W. Calvin Chestnut* of Maryland, *pro hac vice*, for defendant.

Superior Court, New Castle County, May Term, 1916.

Summons Debt, No. 71, January Term, 1915.

Action by David Cohen against the Home Insurance Company, a corporation of the State of New York. Verdict directed for defendant.

See also, 5 *Boyce*, 531, 95 *Atl.* 238, 912.

In this action David Cohen, the plaintiff, seeks to recover from the Home Insurance Company, the defendant, the sum of

eight thousand dollars, with interest from January 6, 1914, alleged to be due him from the company, on two policies of insurance on plaintiff's stock of goods; the property covered by the policies was destroyed by fire on January 6, 1914.

The plaintiff has introduced testimony to show that the defendant company through Mr. Horsey, of the firm of Jones and Horsey, the company's agent at Greensboro, on September 15, 1913, issued to the plaintiff, a policy of insurance for four thousand dollars on a stock of goods contained in a building, which he occupied as a store, at Greensboro, Caroline County, Maryland; that some time prior to October ninth following, when the premium on the policy was paid by Cohen to Horsey, the plaintiff inquired of Mr. Horsey the meaning of the iron-safe clause; that Horsey stated in substance, that he, Cohen, need pay no attention to it and he could disregard it, as in his opinion it was intended only for crooks. Some time subsequent to the ninth of October, the plaintiff applied to Horsey for other insurance of four thousand dollars, on the same stock of goods. Horsey suggested to him that he take an inventory of the stock of goods in his store, which was done and submitted to Horsey on or about November third, next. On November first the company through Horsey, issued the other policy of insurance for four thousand dollars, making eight thousand dollars of insurance he had. The property covered by both policies was destroyed by fire about three o'clock in the morning of January 6, 1914. The firm of Jones and Horsey was the only agent of the defendant company at Greensboro, and through an arrangement with the office of the company in Baltimore, Horsey, to save himself the clerical work of making out policies, would send the data to the Baltimore office, where the policies would be made out and returned to Horsey for him to countersign the firm's name, deliver the policies and collect the premiums. This practice was followed in this instance. The plaintiff introduced into evidence the inventory of November third, which he had kept in his room in the hotel at Greensboro, also a number of sheets of tablet paper of which the following is a specimen:

Statement.

"Week of Oct. 27/13.

| | | | |
|---|---|---|---|
| Oct. 27 | Mon | $ | 49.31 |
| 28 | Tues | | 23.15 |
| 29 | Wed | | 7.86 |
| 30 | Thurs | | 12.71 |
| 31 | Fri | | 11.27 |
| Nov. 1 | Sat | | 40.92 |

$145.22"

(Representing cash on hand at the end of each business day.)
"Sat. Nov. 1/13 help 10.00 self 20.00."

(Money paid out of the money drawer.)

| | | |
|---|---|---|
| "Mon | $ | 49.31 |
| Tues | | 23.15 |
| Wed | | 7.86 |
| Thurs | | 12.71 |
| Fri | | 11.27 |
| Sat | | 70.92 |

$175.22"

(Representing cash received each day.)

There was also admitted into evidence a passbook of one customer, showing the amount of sales to that customer for credit, also showing payments and date of same, by that customer. The testimony showed that the plaintiff had seven other credit customers having passbooks, and that the amount of money due him on his sales for credit at the time of the fire did not exceed one hundred and twenty-five dollars. He was unable to produce the passbooks of these seven other credit customers.

It was shown that the credit sales to the eight credit customers were entered in a book kept for that purpose on the counter in the store. The fire destroyed this book. The plaintiff did not have an iron safe in his store.

· Both policies of insurance were of the kind known as standard fire insurance policy of the State of New York, and both contained the following warranties, provisions and stipulations:

"Warranty to Keep Books and Inventories and to Produce Them in Case of Loss.

"The following covenant and warranty is hereby made a part of this policy:

"1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

29 Del.]   Cohen vs. Home Inusrance Co.   205

Statement.

"2d. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in the first section of this clause, and during the continuance of this policy.

"3d. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon.
*   *   *

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on back hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.   *   *   *

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; or if the subject of insurance be a manufacturing establishment and it be operated in whole or in part at night later than ten o'clock, or if it cease to be operated for more than ten consecutive days; or if the hazard be increased by any means within the control or knowledge of the insured; or if mechanics be employed in building, altering or repairing the within described premises for more than fifteen days at any one time; or if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple, or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage; or if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed; or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before a loss; or if illuminating gas or vapor be generated in the described building (or adjacent thereto) for use therein; or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises, benzine, benzole, dynamite, ether, fireworks, gasoline, greek fire, gunpowder exceeding twenty-five pounds in quantity, naptha, nitro-glycerine or other explosives, phosphorus, or petroleum or any of its products of greater inflammability than kerosene oil of the United States standard (which last

may be used for lights and kept for sale *according to law, but in quantities not exceeding five barrels, provided it be drawn and lamps filled by daylight or at a distance not less than ten feet from artificial light)*; or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days.   *   *   *"

The plaintiff claims that the provisions of the iron-safe clause in both policies were waived by reason of Horsey's statement to him, and as the agent of the company knew that he had not taken an inventory within thirty days of the issuance of the first policy and had issued the second policy with the knowledge of this fact, together with the knowledge that he, Cohen, did not keep books in compliance with the provisions of the iron-safe clause, the knowledge of the agent Horsey was the knowledge of the defendant company and therefore the company was estopped from setting up a breach of the conditions of the iron-safe clause on the part of the plaintiff.

The plaintiff also claims a substantial compliance with the provisions of the iron-safe clause.

At the conclusion of the plaintiff's case, counsel for the insurance company made the following motions:

"The defendant moves to strike from the evidence, the testimony of the witness, T. Clayton Horsey, in which he narrated a conversation between himself and David Cohen, the plaintiff, on or before October 9, 1913, and which conversation was in substance and effect, that the said David Cohen asked Horsey what the iron-safe clause on the policy was, and Horsey replied that he could disregard it and need pay no attention to it, as in his opinion, it was intended only for crooks, also the testimony of the witness, David Cohen, the plaintiff, in which he narrated a conversation between himself and T. Clayton Horsey on or about September twenty-fifth, that is, according to the witness' statement, about one week or less after the delivery of the policy of insurance to him, dated September 15, 1913; and which conversation was in substance and effect that David Cohen went to Horsey and asked him what the iron-safe clause on the policy was, and Horsey replied that it was put there for crooks and he, Cohen, need pay no attention to it but could disregard it.

"(This testimony was admitted over objection with the reservation of right to move to strike out after full statement of each witness.)"

Counsel also moved for a nonsuit, based on the grounds that the agent under the provisions of the policies did not have the right to waive the conditions of the iron-safe clause, and that the knowledge of the agent in this case cannot be imputed to be the knowledge of the company.

Also that the evidence affirmatively shows that the plaintiff had not complied with the provisions of the iron-safe clause, and therefore he is not entitled to a recovery in this action.

The court upon the conclusion of very able and exhaustive arguments by counsel in support of and in opposition to the motion, did not at the time pass upon the questions of law raised, and proceeded with the trial of the case.

At the conclusion of the testimony in the case prayers were presented by both sides.

RICE, J., after stating the facts as above, delivered the opinion of the court:

The first prayer of the defendant is in the following language;

"The defendant requests the court that the jury be instructed to find a verdict for the defendant."

The questions of law and fact upon which this prayer is based, are the same as were presented to the court by the defendant in his motion for a nonsuit.

[1, 2]   We will first state that we believe each of the insurance policies sued on by the plaintiff in this case is a Maryland contract, and that the law of Maryland as pronounced by the courts of that state controls the present case so far as it is applicable to the facts before us, and where in our opinion the courts of Maryland have not passed upon the questions of law before us, we of course are to be governed by the general law, naturally giving preference to the decisions of the courts of our own state when applicable.

[3]   The first question for our consideration is whether Horsey, the countersigning agent at Greensboro, of the Home Insurance Company, had the power in law to waive the provisions and conditions of the iron-safe clause in the policies in question.

That a countersigning agent with authority to deliver policies and collect premiums has the legal power and authority to waive by parol those provisions in the policy which are by the terms of the policy made the subject of agreement between the agent and the assured, with respect to conditions existing prior

to·or at the time the policy is delivered by the agent and accepted by the assured, is so well settled as a principle of law in Maryland, Delaware and throughout the country generally that we will not pause to discuss it.

[4] It is equally well settled in theses jurisdictions that notice to the agent of such matters is notice to the company. *Insurance Co. v. Rosenberg*, 7 *Penn*. 174, 74 *Atl*. 1073; *Hartford F. Ins. Co. v. Keating*, 86 *Md*. 147, 38 *Atl*. 29, 63, *Am. St. Rep*. 499; *Beebe v. Farmers' Ins. Co*., 93 *Mich*. 514, 53 *N. W*. 818, 18 *L. R. A*. 481, 32 *Am. St. Rep*. 519; *Lewis v. Guardian Ins. Co*., 181 *N. Y*. 392, 74 *N. E*. 224, 106 *Am. St. Rep*. 557.

[5] Upon the question of the power of an agent of an insurance company to waive, by parol, the provisions of the iron-safe clause, after the delivery and acceptance of the policy we have been unable to find a Maryland authority, although the court in *Hartford F. Ins. Co. v. Keating* in passing upon the question of waiver and knowledge by the agent of conditions existing at the time of the issuance of the policy, said:

"Nor does the clause providing that 'no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be indorsed hereon or added hereto,' etc., affect the question. It does not apply to the making of the contract, but to the provisions of the contract itself, after it has gone into effect, so as to prevent agents from modifying the terms of the policy after it has been issued."

Upon the point now under consideration, counsel for the plaintiff rely largely upon the case of *Insurance Co. v. Rosenberg*, 7 *Penn*. 174, 74 *Atl*. 499. In that case the court used the following language:

"Although the plaintiff had procured other insurance upon his stock of goods greater than that which was permitted by the policy sued on, that fact would not prevent him from recovering in this case, provided the agent of the defendant company, who issued and delivered the policy, and collected the premium, had knowledge of such excessive insurance, and the company did not cancel the policy. The knowledge of an agent having such powers, and performing such duties, is held to be the knowledge of the company, and precludes the company from claiming a forfeiture of the policy on the ground of noncompliance with the covenant against other insurance."

While the report of the case does not show it, yet an exami-

nation of the record discloses the fact that the question there dealt with was other insurance on the property, existing at the time the policy in question was issued by the company, and knowledge of other existing insurance on the part of the agent at the time of issuing the policy, other insurance under the terms of the policy being the subject of agreement entered on the policy.

There also was testimony in the *Rosenberg case* that the agent had communicated his knowledge to the company of the existing insurance at the time the policy was issued. We believe that the question now before us differs from the one before the court in the *Rosenberg case.* Our examination of the cases passing upon this question leads us to the opinion that an agent, having the authority and power of the agent Horsey, has not the authority in law by his act or statement to waive the conditions of the iron-safe clause after the delivery of the policy and before the loss. We therefore are of the opinion that under the facts in this case Horsey did not have the power in law to waive the provisions of the iron-safe clause.

In the case of *Finleyson Bros. v. Globe Ins. Co.,* 16 *Ga. App.* 51, 84 *S. E.* 311, the court said:

"The 'iron-safe clause' in the policies was a warranty, on the part of the insured that they would do something in the future, and was important as providing a check against fraud on their part; and their compliance with this part of the contract was a condition upon which, by the express terms of the contract, the validity of the policy depended. *Scottish Union Ins. Co. v. Stubbs,* 98 *Ga.* 761, 27 *S. E.* 180; *Southern Fire Ins. Co. v. Knight,* 111 *Ga.* 622, 36 *S. E.* 821, 52 *L. R. A.* 70, 78 *Am. St. Rep.* 216. The plaintiffs, therefore, were bound to take an inventory within thirty days after the transfer of the policies; else the contract of insurance would be void from that date. It is conceded in the petition that no such inventory was taken. The question, then, is whether the agent of the defendant could and did, as contended by the plaintiffs, waive this provision of the policy. In the policy it is stipulated that no officer or agent 'shall have power to waive any provisions or conditions of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto.' It is not alleged that the waiver was indorsed upon or attached to the policy. Neither does it appear from the petition or the policy that the 'iron-safe clause' was one of the provisions or conditions which were the subject of agreement. The failure of the insured to comply with the provisions of the 'iron-safe clause' placed it beyond the power of the agent to amend, reconstruct, or resurrect the policy. By the very wording of the policy, the policy was void, not merely voidable. *Insurance Co. of North America v. De Loach,* 3 *Ga. App.* 812, 61 *S. E.* 406. Agents are without authority to bind their principal by any waiver of the terms of the policy, after a forfeiture has already

taken place.  *Graham v. Niagara Ins. Co.*, 106 *Ga.* 840, 32 *S. E.* 579.  And notice to an agent who solicits insurance, made subsequent to the issuance of a policy, of a violation of a condition of the policy, is not notice to the insurer, so as to constitute waiver of the insurer's right to forfeit the policy thereunder."

In *N. W. Ins. Co. v. Mize* (*Tex. Civ. App.*) 34 *S. W.* 670, the court used the following quotations from *Egan v. Insurance Co.*, 28 *Or.* 289, 42 *Pac.* 611:

"No rule is better settled than where a limitation on the power of an agent is brought home to the person dealing with him, such person relies upon any act in excess of such limited authority at his peril; and hence, when an insurance company limits the power of its agent, and notice of such limitation is brought home to the person dealing with him, it is not bound by any act done by the agent in contravention of the notice."

[6]  The next question before us is whether the defendant company is estopped from setting up a breach of the conditions of the policy, because the agent at the time of the issuance of the second policy had knowledge that the assured was not complying with the provisions of the iron-safe clause.

The question of estoppel is closely allied with that of waiver, and what we have already said concerning waiver is largely pertinent to the present question.

The facts of the case on this point are, that at the time the agent made the statement to the assured upon which the waiver of the conditions of the iron-safe clause is based, nothing was said by either party concerning the desire of the assured to take out other insurance on his stock of goods.  That a week or so after the conversation between the assured and the agent Horsey, the plaintiff applied to him for other insurance, and there is no evidence showing that at that time or any subsequent time prior to the loss was the iron-safe clause a matter of discussion between them.  About the time of the issuance of the second policy to the assured, the agent suggested that Cohen take an inventory of his stock of goods.  The second policy was similar to the first and contained the iron-safe clause, and the assured accepted it without objection of any kind.

The limits within which an agent may by his act or statement estop his principal must be measured by the extent or scope of

his authority when the extent of the agent's authority is within the knowledge of the person with whom the agent deals. And knowledge of the agent beyond the scope of his authority as known to the persons with whom he deals, may not be imputed to be the knowledge of the principal, unless the scope of the agent's authority has been apparently enlarged, as by a course of business transactions.

We have already stated our opinion to be that Horsey did not have the authority and power to waive the provisions of the iron-safe clause, and the logical deduction from such a holding in this case must be that he had not the power or authority to estop the company by his acts and statements concerning a breach of the conditions of the iron-safe clause.

It will be noticed in the present case that at the time of the purported waiver of the provisions of the iron-safe clause by the agent of the company, there had been no breach of the conditions of the first policy, and the second policy under the testimony, was not within contemplation at that time.

[7] Concerning the power of the agent to waive future breaches of conditions and to estop the company by his knowledge of the insured's intention not to observe the conditions of the policy, the court in Sowers v. Mutual Fire Ins. Company, 113 Iowa, 551, 85 N. W. 763, said:

"While an insurance company may be bound by knowledge of its soliciting agent regarding past or present conditions, such an agent has no power to waive future conditions; nor is the company estopped by his knowledge of the future intentions of the insured."

[8] The next question is whether there was a substantial compliance with the conditions of the iron-safe clause, on the part of the assured which would entitle him to a recovery in this action.

In this connection we will first consider the first policy of insurance issued to the plaintiff by the defendant company.

The policy was issued on September 15, 1913, and under its provisions since he had not taken an inventory within twelve calendar months prior to the date of the policy, he was required to take one in detail within thirty days of its issuance.

Under the facts of the case the inventory was not taken until November third, which was more than thirty days after the issuance of the policy.

We have already held that there was no legal waiver of the provision of the policy; and we believe the question now before us concerning the first policy is expressly decided in the following Maryland case, *Reynolds v. German American Ins. Co.*, 107 *Md.* 118, 68 *Atl.* 262, 15 *L. R. A.* (*N. S.*) 345, in which it was said:

"It is contended that a substantial and not a literal compliance with this clause is all that is required, and that the insured substantially fulfilled the requirements of the clause. Much of what we have said above is applicable to this point. It cannot be said to be a substantial compliance with such a requirement, to take an inventory fourteen days after the policy has become null and void. If the company was to be held liable, it had the right to have such an inventory in existence during all the time its policy was in force, excepting in so far as it had agreed to the contrary—during the thirty days. Not taking any inventory during that time is a very different matter from taking one in a way which might not be considered perfect. Methods of bookkeeping, taking inventories, etc., may differ, and those adopted in an ordinary country store cannot be expected to be as thorough as those followed by experienced bookkeepers and merchants. A substantial compliance in such respects might answer, but no compliance is altogether a different question. It would have a tendency to cause utter confusion and uncertainty, for courts to undertake to determine what would be a substantial compliance with such a contract as this, if they be permitted to say what time within the eleven months would be a 'substantial compliance' with it. The logical conclusion of the appellant's construction would be that if a fire occurred just before the close of the year embraced by a policy, the insurer could not complain, if the insured completed an inventory the day before the fire. Such a construction would make a new contract for the parties. It is very much better for the insured, if he be careless or negligent, to know that he must take the inventory within a fixed time, than to let him carry the risk of taking one before a fire occurs. If this stock had burned before the inventory was taken, but after the thirty days, it could hardly be contended that the appellant could have recovered. The safe course for the insured and the insurer is to have plain, definite terms in their contract and to require, each to comply with them, if they be reasonable, unless waived or changed by mutual consent."

[9] We now pass to the question as to whether there was a substantial compliance on the part of the assured, in respect to the policy issued November 1, 1913.

We find from our examination of the Maryland authorities that the courts of that state require of the assured a rather strict compliance with the provisions of the iron-safe clause. But counsel for the plaintiff argues that the courts of Maryland have

never been called upon to pass on a case when the facts are at all similar to the facts in this case, and much reliance is placed upon the *Rosenberg case* in this case.

We are of the opinion that the facts of the *Rosenberg case* as disclosed by the record differ greatly from the facts in the case under consideration.

The facts in the *Rosenberg case* are substantially as follows: The assured did not keep an iron safe in his store; that he kept and produced at the trial an inventory and a daily sales book showing the amount of money taken in each day; that he did a strictly cash business; that he kept the original bills of the purchases of goods he made and added to his stock; that some of his original bills were destroyed in the fire, and the adjuster after the fire requested him to secure duplicates of the bills which were missing.

In the present case the plaintiff, did not have an iron safe, he produced an inventory taken November 3, 1913, he did not produce any original bills of goods received, from the time of taking the inventory until the time of the fire, he stated the original bills were all destroyed, but he did produce duplicates of the bills. This he was not requested to do by the adjuster or any representative of the company. He did produce at the trial a number of loose papers purporting to be a daily record of his cash on hand, cash received, and cash paid from the money drawer; these papers had been sent to his home in Wilmington from time to time. He had about eight credit customers and kept a book showing his credit sales but it was destroyed in the fire. There was introduced into evidence one passbook of a credit customer showing the credit sales to that customer and payments made by the customer on account. He was unable to get from the customers and produce at the time the other passbooks. It was in testimony that his unpaid credit sales at the time of the fire amounted to not more than one hundred and twenty-five dollars.

When the adjuster after the fire asked him for his books he said he did not have any and at that time produced none.

Under these statements of facts we believe we are asked to go much further in holding that there was a substantial compli-

ance with the conditions set forth in the policy than did the court in the *Rosenberg case*. We are asked to hold that no compliance in respect to some of the conditions is a substantial compliance. This we cannot do as we believe the court in the *Rosenberg case* went as far as a court may do with reason and justice, and moreover we would not be disposed to extend the policy of substantial compliance further than was done in the Delaware case, in face of Maryland authorities holding the assured to a somewhat strict compliance with the conditions of the iron-safe clause. *Miller v. Ins. Co.* (Md.) 96 *Atl.* 267; *Reynolds v. Ins. Co.*, 107 *Md.* 110, 68 *Atl.* 262, 15 *L. R. A.* (N. S.) 345.

In the Delaware case the court said:

"Unquestionably such clause is a covenant which constitutes a promissory warranty on the part of the plaintiff, a breach of which would prevent his recovery. The plaintiff must show at least a substantial compliance with every material part of the said clause or fail in his suit."

We are of the opinion that under the facts of this case the assured did not substantially comply with the conditions of the insurance policies upon which the plaintiff's case is based.

For the several reasons stated, we believe it to be our duty, and we do charge the jury as requested by the defendant in its first prayer, that you, gentlemen of the jury, find a verdict in favor of the defendant.

　　　　　　　　　　　　　　　　　Verdict for defendant.