## 767. INSURANCE COMPANY OF NORTH AMERICA *v.* DeLOACH & COMPANY.

1. A fire-insurance company which, through its agent, has either actual or constructive notice of the existence of outstanding insurance upon property when it issues a policy upon the same property, is estopped from insisting upon a clause in the policy whereby it is to be void if there be outstanding insurance.
2. An indorsement upon an insurance policy, susceptible of two constructions, will be construed most strongly against the insurer.

Action upon insurance policy, from city court of Reidsville— Judge Morgan. August 24, 1907.

Argued December 17, 1907.—Decided February 24, 1908.

Rehearing denied February 28, 1908.

*King, Spalding & Little, W. G. Warnell,* for plaintiff in error. *W. T. Burkhalter, Hines & Jordan,* contra.

RUSSELL, J. Suit was brought upon an insurance policy in the sum of $1,200, written by the defendant company on the plaintiffs' stock of goods. The policy contained the usual clause making it void in the event that additional insurance, whether already existing or thereafter to be procured, should be taken without the written consent of the company. Upon the policy is indorsed the following entry: "$500 additional concurrent insurance permitted." At the date that this policy was issued, the insured had in force two policies of the Ætna Insurance Company, amounting to $2,000, on the same stock of goods. The proof discloses that the agent

of the defendant company, at the time he issued the policy sued on, knew that the Ætna Company had in force insurance on the same stock of goods, but whether he knew the amount of it does not appear. The plaintiffs secured a verdict; and the insurance company excepts.

1. The specific point made by the insurance company is, that admitting that ordinarily the issuance of a policy of insurance, with knowledge that there is other insurance upon the same property, is a waiver of the stipulations in the policy against other insurance, still, to have this result, the agent of the insurance company must not only have knowledge that there is other insurance, but must also know the extent of the same; and that in any event, the amount of the outstanding insurance being unknown, the fact that in the present case the agent of the company put upon the policy a written provision that the additional concurrent insurance should not exceed $500 should be held to be a limitation upon the extent of the waiver. The proposition that if the agent of the insurance company issued this policy with knowledge that there was $2,000 of concurrent insurance outstanding in the Ætna Company on the same property there would be a waiver as to such policy, and that the insurance company could not claim an avoidance on account of it, is well settled. *Johnson* v. *Ætna Ins. Co.*, 123 *Ga.* 204. We do not think it material whether the amount of this outstanding insurance was actually known or not, in the absence of some suppression of truth by the insured as to it; for the knowledge which will effectuate a waiver includes not only that which is actually known, but also that which might have been ascertained by reasonable inquiry. The knowledge of the amount of the policy may be either actual or constructive. "Notice which is sufficient to excite attention and put a party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led." And this is applicable to the circumstances under which a waiver of the conditions of an insurance policy may arise. May on Ins. § 501; Grandy *v.* Orient Ins. Co., 52 S. C. 224; Phœnix Ins. Co. *v.* Raddin, 120 U. S. 183; Reynolds *v.* Conn. Fire Ins. Co., 47 N. Y. 559; Lebanon Mut. Ins. Co. *v.* Kepler, 106 Pa. St. 28.

2. If we should concede that the words indorsed on the policy, "$500 additional concurrent insurance permitted," were susceptible of two constructions,—the one, that the agent, not knowing the

amount of the outstanding insurance, was attempting to guard against an excessive amount, so that the amount given should relate to that already in force; and the other, that it related to the insurance to be taken in addition to that outstanding at the time the policy was written, including that then being written,—the court would be compelled to adopt the latter construction; for the provisions of a policy are to be more strongly construed against the insurer. *Mo. St. Life Ins. Co.* v. *Lovelace*, 1 *Ga. App.* 447 (4). Of course the intention of the parties is to be first considered, and even in a case of doubt the court is to go no further than a fair construction of the language used will permit. *North British &c. Ins. Co.* v. *Tye*, 1 *Ga. App.* 389. But there is much in the parol testimony which indicates that by the use of the word "additional" it was the intention of the parties to waive objection to any policies which had previously been written.

We therefore conclude that the insurance company was estopped from complaining of the existence of the outstanding insurance, by reason of the fact that it had waived any right to avoid the policy on account of the additional insurance, by accepting the premium, with notice, actual or constructive, of its existence. As the Supreme Court of the United States says in the Raddin case, supra, upon a similar question: "To hold otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens."

*Judgment affirmed.*

### UPON THE MOTION FOR REHEARING.

Russell, J. After a careful consideration of the motion for rehearing, no reason appears why further argument can be of any advantage. The amount of insurance that DeLoach & Company had in the Ætna Insurance Company at the time of the issuance of the policy which is involved in this case, and the exact amount of each policy, is immaterial and practically unimportant in reaching the ruling that the agent was presumed to know the amount of this outstanding insurance, because, by the exercise of ordinary care, he could have known it before delivering the policy or collecting the premium. Investigation into the various grounds of the motion

has only strengthened our conviction that our judgment is right. The application for a rehearing is therefore denied.

Counsel for plaintiff further ask, "that, in the event this court takes a different view of the matter from counsel and declines a rehearing (petitioner's counsel being profoundly impressed with the conviction that the rulings of the court in this case conflict with the rulings of the Supreme Court, as hereinbefore set out), the court will reopen this case, and will certify to the Supreme Court of Georgia the questions: 1st. As to whether or not the alleged information to Sorrier, the agent of the defendant company below as to other insurance, the parol proof thereof, and the ruling that the same constituted a waiver, does not necessarily conflict with the rulings of the Supreme Court of Georgia in the cases of *Rogers* v. *Atkinson,* 1 *Ga.* 12, and *Morris* v. *Imperial Insurance Co.,* 106 *Ga.* 462. 2nd. Whether the ruling of this court, that the indorsement upon the policy sued on, "$500 additional concurrent insurance permitted," referred to insurance thereafter procured and not to insurance theretofore written and existing at the time the policy sued on was written, said ruling amounting, as construed by counsel, to a reformation of the policy in the city court of Reidsville, so as to read $2,500 additional concurrent insurance permitted, and, failing to give effect to the plain ordinary meaning of the words employed and their reasonable intendment, does not necessarily conflict with the rulings of the Supreme Court of Georgia in the case of *Fowler* v. *Preferred Accident Insurance Co.,* 100 *Ga.* 330, and in the case of *Clay* v. *Phœnix Insurance Co.* 97 *Ga.* 53."

As we find absolutely nothing in the decision of this case, or in the opinion of this court, filed therein, which is not in accord with the rulings of the Supreme Court in the cases cited, we are constrained to decline to reopen the case for the purpose of certifying to the Supreme Court the questions presented by the plaintiff in error. Our specific ruling is that the evidence adduced in the present case shows a waiver of one of the material conditions of the policy,—the covenant of the assured that other insurance would avoid the contract. The fact that parol evidence is inadmissible to vary the terms of the written contract has no application whatever to the question before us; nor does the equally well-settled principle, that a city court is without jurisdiction to reform a contract, affect the decision of this case. The decision in *Rogers* v. *Atkin-*

*son,* 1 *Ga.* 12, is only concerned with the first proposition, and *Fowler* v. *Ins. Co.,* 100 *Ga.* 330, rules that city courts can not administer equitable relief.

The purpose of the parol evidence in this case was not to alter the terms of the written contract. A written contract can stand with its binding force absolutely unaffected; and yet it may be that a waiver of some of its conditions or stipulations is absolutely necessary to its existence. In some cases inconsistent clauses will absolutely destroy a writing unless that construction which will preserve the intention of the parties be adopted. The rule of law which will not suffer the provisions of a written instrument to be in any way affected by parol rests, it is true, on the presumption that all antecedent and contemporaneous negotiations were merged in the written instrument, but beyond that, it rests upon the further presumption that the parties to the writing *intended to make* a contract which (either of their own volition, because of the importance of the matter, or because, by legal compulsion, a writing is required) they desire reduced to writing. It is never to be presumed that either party (to what is assumed to be a written contract) *intended* that the instrument, which the parties had taken the pains to reduce to writing, should be an absolute nullity,—that the parties intended to create a false token, and, while pretending to contract about *something,* were agreed only on the proposition that they would contract about *nothing.*

In the present instance it is stipulated that DeLoach & Company had $2,000 of insurance in the Ætna Insurance Company on their stock, and were solicited by the agent of the plaintiff in error to take more insurance. The agent was told by them that they had insurance on their stock of goods. The exercise of ordinary care and diligence would have led to the information that this insurance amounted to $2,000. So we have a contract, which the parties intended should give insurance, actually destroying insurance, and the defendants in error (according to the contract) paying for the privilege of *reducing* their protection against loss by fire several hundred dollars. The parties must be presumed to have intended to contract honestly, and with the intention of giving the insured something for their money. And yet, giving effect to every provision in the policy, the company was going to collect and, according to the policy, did collect a premium upon a contract

which both parties knew was void, because they knew that the insured were violating the contract in having $2,000 other insurance when they had covenanted not to have over $500 concurrent insurance. If it was the intention of the parties to make a contract at all, it was to be a contract by which the company agreed, in consideration of the premium paid, to insure the stock of goods for $1,200. If this was not the intention, then there is no contract. The contract is to be void, unless otherwise provided by agreement indorsed hereon or added hereto, "if the insured *now* has . . any other contract of insurance," etc., and the only indorsement or addition to the contract is for "$500 concurrent insurance." Both parties know that the defendants in error have $2,000 insurance, and yet the contract only allows them to have $500 other insurance. The agent proposes, and signs the writing, with knowledge that it is void; the merchants accept the policy and pay the premium, knowing it is worthless. Both parties take the pains to reduce to writing an instrument which expressly stipulates it shall be void upon a certain condition which they know already exists and which has not been attempted to be altered. This is the only conclusion that can be reached, unless we presume that it is the intention of the parties to contract with reference to $1,200 of insurance, and that the insurer, with knowledge of the fact that the insured has such an amount of other insurance as prevents a contract, waives this stipulation in order that the contract can be created, and the company thereby receive the premium. It is no answer to this proposition to say that the insured might cancel the pre-existing insurance, and that that might have been the intention of the parties. If the insurance in the Ætna was in force when the contract was made, and both parties either actually or constructively knew that fact, then the policy now before us was void and not merely voidable when delivered, and neither amendment, reconstruction, nor resurrection can reach that which is absolutely void in law. That construction which will uphold a contract is to be preferred to that which will destroy it. We therefore thought the court rightly admitted the evidence in relation to the knowledge of the insurer upon the point of the existing insurance upon the stock in question. This evidence was not permitted to vary the contract as expressed in writing, but was material to show whether there was in fact any contract at all.

There is no need of certifying a question to the Supreme Court upon this point, because the evidence objected to was admissible to explain whether the words "additional concurrent insurance" referred to insurance which had already been taken out or to that which might be procured. So far from there being reason why this court should inquire whether our holding in the present case is in conflict with the decision in *Clay* v. *Ins. Co.*, 97 *Ga.* 55, our holding is squarely in line with the opinion pronounced by Judge Atkinson in that case. In the *Clay* case, supra, the policy was sought to be avoided because there was a mortgage upon the property insured, just as in the present case payment is resisted because it transpires that the insured had other policies upon the same risk which are not mentioned in the contract of insurance. Otherwise there is no real difference between the cases, so far as this feature is concerned. It having been shown in the *Clay* case that the agent knew the property insured was mortgaged at the time the policy issued (just as the evidence in the case before us shows that the agent, presumptively at least, knew that the property covered by the present policy was also protected by other policies for an amount largely in excess of the company's express permission), the Supreme Court said: "To allow the company to defeat a recovery by simply showing that a mortgage existed upon the property at the time the insurance was effected would be to impute to it a deliberate purpose to defraud the assured. It would be to permit the company to say to the assured: we had no intention of insuring your property in the first instance; the policy of insurance is a false token, by means of which we have obtained your money in payment of premiums; we received and retained the money with no intention of affording to you the immunity from loss which you had a right to expect the policy would afford. Courts will not in such a case impute a fraudulent purpose to the insurance company in the execution of its contract of insurance, but will rather presume that the policy was issued in good faith and with an honest purpose to afford to the assured immunity against loss as stipulated therein. It will be presumed conclusively, when, with knowledge that there was a mortgage upon the property, it nevertheless issued the insurance and accepted the premium, that it intended to waive the condition in question, and which would have the effect, otherwise, to render the policy void. In such a case,

if the company intend afterwards to insist that the condition is a valid one, it should refuse, in the first instance, to issue the policy, or, having issued it, it should exercise its right of cancellation before a loss; and failing this, it is estopped to rely upon the breach of condition. It would have no right so to deal with the assured as to lead him to believe that his property was in fact insured, when the policy, according to its contention, was really void."

Both in the motion for rehearing and in the first question which counsel ask us to certify to the Supreme Court, it is insisted that the ruling of this court is in conflict with the decision in *Morris* v. *Insurance Co.,* 106 *Ga.* 461 (4). The point there ruled, that knowledge by the agent of the fact that the insured had not kept a set of books before the policy issued would not amount to a waiver of a covenant of the insured, contained in the policy, by which the agent agreed *thereafter* to keep a certain set of books, is absolutely sound, and it would be worse than useless for us to certify it to the Supreme Court for review. But the ruling in that case can have no possible bearing here. As well said by Judge Fish on page 469, "the doctrine of estoppel was not applicable under the circumstances stated. . . . The stipulation in question calls for this requirement in the *future,* without regard to how he may have conducted his business in the past." But we apprehend, if Morris had expressly warranted that he had then, at the very moment that the contract was being made, on hand and in daily use, a complete set of books, and had agreed that his policy should be void if this was not true,—and yet the agent wrote the policy, though he knew it to be untrue, that the Supreme Court would have held, in conformity with the ruling in the *Clay* case, that the issuance of the policy and the acceptance of the premium by the agent with knowledge amounted to a waiver, and estopped the company from insisting upon the stipulation. It will never do to hold that either a person or a corporation can deliberately charge and receive something for nothing.

For these reasons the application for rehearing, with a view of certifying the questions heretofore mentioned, is refused.