### 1163.   FAIR *v.* METROPOLITAN LIFE INSURANCE CO.

1. A provision in a written· and signed application for life-insurance, which contained the condition and warranty that the policy to be issued thereon "shall not take effect.unless upon its date and delivery [the person proposed to be insured] be alive and in good health," was waived by the company, if, with knowledge that the insured was in fact not in good health, it nevertheless consummated the contract of insurance by issuing and delivering the policy and receiving the premiums, although it was expressly provided that no condition of the policy could be changed or any forfeiture waived except in writing signed by the president or secretary of the company.

2. Any knowledge affecting the rights of the insured, which comes to an agent while he is performing the duties of his agency, becomes the knowledge of the company. Therefore any statement relating to the condition of his health, made by the insured, at the time of his application for insurance, to the physician entrusted by the company with the duty of making the examination in its behalf and ascertaining the state of the applicant's health, would be a statement made to the company.

ON REHEARING.

3. ·Statements in the proof of death are admissible as evidence against the insured or the beneficiaries in the policy, especially where the policy stipulates that "all the contents of such proofs of death shall be evidence of the facts therein stated in behalf of, but not against the company."

Certiorari, from Bibb superior court—Judge Felton.   March 3, 1908.

Argued July 2,—Decided December 8, 1908.

Rehearing February 1,—Decided February 24, 1909.

*L: D: Moore,* for plaintiff.

· *Hardeman, Jones & Johnston,* for defendant.

HILL, C. J.  William T. Fair sued the Metropolitan Life In-
surance Company, in a justice's court, on a life-insurance policy
issued by the company on the life of his wife, Sarah B. Fair.  The
jury in the justice's court found a verdict in favor of the plaintiff,
and on certiorari to the superior court the verdict was set aside
and a new trial granted.  This is the second grant of a new trial
by the superior court on certiorari in this case, the first grant hav-
ing been affirmed by this court (*Fair* v. *Metropolitan Life Insur-
ance Co.*, 2 *Ga. App.* 376 · (58 S. E. 492), the affirmance being
based on the general rule that the first grant of a new trial on
certiorari will not be interfered with unless the verdict is abso-
lutely demanded by the evidence.  The case should now be finally
disposed of on the merits.

The insured, on October 27, 1904, made a signed application for
insurance on her own life, containing, among other things, the
following conditions and warranties: "Said policy shall not take
effect unless upon its date and delivery [the] life proposed [to be
insured] be alive and in good health."  And, as a part of the policy
contract, she made and signed the following answers to questions
propounded to her by the medical examiner of the company: "4.
Is said life blind, deaf, or dumb, or has it any physical or mental
defect or infirmity of any kind?  No.  5. Name of all physicians
who have attended within two years, when, and for what com-
plaint.  None."  The policy was issued ·November 7, 1904, and
expressly recited that it was issued subject to the following con-
ditions: "Provided, however, that no obligation is assumed by
the company prior to the date hereof, nor unless on said date the
insured is alive and in sound health. . . First.  This policy
is issued upon an application which omits the warranty usually
contained in applications, and contains the entire agreement be-
tween the company and the insured and the holder and owner
hereof.  Its terms can not be changed, or its conditions varied,
except by a written agreement signed by the President or Secre-
tary of the Company.  Therefore agents (which terms includes
superintendents and assistant superintendents) are not authorized
and have no power to make, alter, or discharge contracts, waive
forfeitures," etc.  "Second.  Unless otherwise stated in the blank
space· below in the waiver signed by the Secretary, this policy is
void if the insured before its date has been . . attended by

a physician for any serious disease or complaint," etc. "4. . .. All the contents of such proofs of death shall be evidence of the facts therein stated in behalf of, but not against the company."

The proofs of death contained the following admissions by the claimant, William T. Fair: "Date of death? Year 1905, August 25th. Cause of death? See doctor's certificate. . . For how long was deceased confined to house and prevented from attending to business by last sickness? Has complained of rheumatism for about two years. . . What sickness previous to the last one has deceased ever had; give full particulars of each sickness, with dates and duration of each? Had rheumatism about two years ago." The statement of the attending physician, being a part of the proofs of death, contained the following: "Cause of death? 1. Chief or primary, bronchitis. 2. Contributing or secondary, rheumatism. . . Was deceased afflicted with any infirmity, deformity, or chronic disease? If so, please specify. Rheumatism."

On the trial the claimant, now plaintiff in error, testified as follows: "She lived ten months after taking out this policy. For about two years before she died she had never walked a step. She hadn't been in good health for about two years before she died; was just skin and bones. . . She had rheumatism that caused her legs to draw up, and she did not look to be in good health. She could not walk, and had not walked for about two years. . . She could sit in a chair all right. The upper part of her body was not affected, and the only part of her body she could not use freely was her legs. . . She had not been in good health for two years, and did not look like she was in good health." The attending physician testified as follows: "Rheumatism is a serious physical infirmity, and the person with rheumatism is not in sound health. Rheumatism tends to shorten the life of any one having it; and if it affects the heart, it produces death. In case of any other illness more serious, it is liable to produce complications and make the illness more serious. If I had known she had rheumatism, I would not have considered her in good health, and would not have approved her application."

From the foregoing statement of the evidence, which was in no wise controverted, it is clearly shown that the insured, when she made her application for the policy, when she made her answers to the questions propounded as to the state of her health, and when

the policy was issued, was not in sound health, but was afflicted with rheumatism, which was a contributing cause of death and a serious physical infirmity. The policy having been issued upon the express condition and warranty that it should not take effect unless upon its date and delivery the insured was in sound health, and the undisputed evidence showing that she was at that time not in sound health, but on the contrary was afflicted with rheumatism, a serious physical infirmity, which contributed to her death, it follows that the policy was not in force at the time of the insured's death, unless the condition upon which the policy was issued was in some manner waived by the company, or unless the company, because of the knowledge of its agent, at the time of the application, of the real condition of the insured, would be estopped from setting up the forfeiture as a defense. Plaintiff in error seeks to avoid the forfeiture of the policy as above indicated, by showing that the physician who examined the insured when she made her application for the policy was fully informed by her as to the true state of her health; that she at that time stated to him that she did have rheumatism, and that on account of this affliction she had not been able to walk for over two years, and had had medical treatment therefor; that this knowledge of the company's physician was knowledge of the company; and that the company, having issued the policy with knowledge that the statement of the insured in her application, that she had no serious physical infirmity and had not been treated by a physician, was in fact untrue, must be deemed to have waived the warranty with respect to it, and can not now be heard to insist upon the falsity of the statement to avoid the policy. In support of this contention in behalf of the plaintiff, three witnesses testified that they were present when the examining physician who represented the company made his examination of the insured and propounded to her the questions in reference to her physical condition, as set out in the application; and that the insured then informed the medical examiner, in answer to these questions, that she had rheumatism, had been prevented by it from walking for over two years, and had been treated for it by physicians. The medical examiner, in his testimony, denied that any such statements were made to him by the insured. On this issue the jury were fully authorized, under the evidence, in finding in favor of the plaintiff. Assuming,

therefore, that the company, through its agent the medical examiner, had knowledge, at the time of the application, of the real condition of health of the insured, the information being imparted to him by the applicant herself, the question arises as to the legal effect of such knowledge in respect to the warranties contained in the application for the policy. There is great and serious conflict in the decisions of the courts on this question; but whatever may be the law as declared by other jurisdictions, so far as this State is concerned it can not now be doubted that if the company did have knowledge of the real condition of the applicant, the issuance of the policy, and the receipt of premiums after possession of such knowledge, would amount to a waiver. The Supreme Court and this court have both held that warranties in applications for insurance are for the benefit of the insurer, in order that it may determine whether it will accept the risk; and if, with knowledge that any representation or statement, however material it may be to the risk, is untrue as made in the application, the insurer nevertheless consummates the contract of insurance by issuing the policy and accepting the premium, the right to subsequently assert the falsity of the representation or statement, for the purpose of avoiding liability, is waived. And this conclusion of law is in no wise affected or altered by a non-waiver clause in the policy, it being held by the Supreme Court that these non-waiver clauses relate entirely to the changes in the contract made subsequently to the issuance of the policy. *Mechanics Insurance Co.* v. *Mutual Building Association,* 98 *Ga.* 262 (25 S. E. 457); *Johnson* v. *Ætna Insurance Co.,* 123 *Ga.* 404, 409 (51 S. E. 339, 107 Am. St. R. 92); *Arnold* v. *Empire M. A. & Life Insurance Co.,* 3 *Ga. App.* 685 (60 S. E. 470); *Insurance Company of North America* v. *DeLoach,* 3 *Ga. App.* 807 (61 S. E. 406). These cases were doubtless not called to the attention of the court below, and seem to have been entirely overlooked by counsel for both parties in the argument before this court.

In support of an affirmance of the judgment granting a new trial, the learned attorney for the defendant in error relies upon the case of *Thornton* v. *Travelers Insurance Co.,* 116 *Ga.* 121 (42 S. E. 287, 94 Am. St. R. 99). The *Thornton* case, supra, is authority for the position of counsel; but it is in direct conflict with the decisions of the Supreme Court in the cases of *Mechanics In-*

.surance Co. v. *Mutual Building Association* and *Johnson* v. *Ætna Insurance Co.*, supra. The Supreme Court in the *Johnson* case criticises and disapproves the decision in the *Thornton* case, and reaffirms the ruling made in the case of *Mechanics Insurance Co.* v. *Mutual Building Association,* supra. The only material question to be decided, therefore, is whether the knowledge of the medical examiner in this case was legally imputable to the company. It is well settled by the authorities that an agent who is clothed with the general power to solicit and consummate contracts of insurance stands in the stead of the company, and represents its whole power to give validity to the contract which he is authorized to execute and deliver, and to waive conditions precedent to liability, by oral agreement. And it therefore follows that any knowledge which such an agent receives in reference to these conditions of the policy is the knowledge of the company. But the code of this State somewhat enlarges the limitations of this rule when it declares that "Notice to the agent of any matter connected with his agency is notice to the principal." Civil Code, § 3027. Whether this question is to be considered as one of fact, or one of law, or one of mixed law and fact, it would seem that knowledge or information of the physical condition of the applicant for insurance, acquired by the medical examiner charged with the duty of making the examination in behalf of the company and obtaining such information or knowledge for the company, would be matter connected with his agency, and would therefore be notice to the company. The knowledge of this character is, we think, peculiarly within the scope of the agency of that particular agent of the company who is charged by the company with the duty of finding out the fact as to the health of the applicant for insurance as a condition precedent to undertaking the risk of insurance.

The question of waiver being the only material issue in the case, and the evidence being sufficient to authorize the finding that there was in fact such waiver as would operate as an estoppel, the court erred in sustaining the certiorari and granting a new trial. The other two assignments of error become wholly immaterial in view of the above ruling on the controlling question in the case.    *Judgment reversed.*

ON REHEARING.

It appears that this court, in the opinion heretofore rendered,

overlooked an assignment of error, made by the petition for certiorari, as to the ruling of the trial court in rejecting a statement contained in the proof of death, of a physician, Dr. Miller, that he had attended the insured for three months, within two years from the date of her application for the policy, for serious bodily disease or complaint, to wit, that he had attended her during said period for morphinomania, colliquative diarrhœa, and malarial fever, during which time she was bedridden for two months. The proof of death containing this statement had been furnished to the company by the plaintiff, and had been produced by the company to be used as evidence on the trial, in response to a notice duly served on the company by the plaintiff. It was expressly stipulated that the statement of Dr. Miller, referred to, set out in the proof of death, should "be considered as part of the proof of death under [the policy], in accordance with the conditions of said policy," this agreement being signed by the plaintiff. It also appeared that the plaintiff had introduced in his behalf a portion of the proof of death.

We think the ruling of the justice's court in rejecting this part of the proof of death, offered as evidence by the defendant, was error. Besides the express stipulation in the policy, that any statement made in the proof of death should be evidence in behalf of the company, the plaintiff, in making the proof required by the policy, incorporated therein this statement of Dr. Miller, and expressly agreed that it should be considered as a part of the proof, and he had called upon the company to produce this proof of death, to be used as evidence on the trial, and had in fact used that portion of the proof of death which contained a statement of facts beneficial to his claim, and he could not be heard to object to other portions of the proof of death, which the defendant desired to introduce in its behalf. The entire proof of death was clearly admissible; and the exclusion of that portion which was offered by the defendant, containing the statement of Dr. Miller relating to the physical condition of the insured, was harmful error.

The defendant relied upon the breach of two separate and distinct conditions and warranties: first, that the insured stated in her application for the policy that she was in sound health and without physical or mental defect or infirmity of any kind;

and second, that she had not been attended by a physician, within two years from the date of her application, for any serious disease or complaint. The plaintiff set up a waiver as to the breach of the first condition and warranty. The second breach of the condition and warranty, relied upon by the defendant, was eliminated by the ruling complained of. Although the evidence established facts which were sufficient to show a waiver of the breach first mentioned, this did not preclude a defense as to the second breach of the condition of the policy, relied upon as a defense. The policy contained the express condition that it would be void if the insured, before its date, had been attended by a physician for any serious disease or complaint; and in one of the questions propounded to the insured by the medical inspector, in her application for the policy, she was asked to give the names of all physicians who had attended her within two years, "when, and for what complaint;" and to this question she responded that she had been attended by no physician for any complaint during the two years previous to the date of her application for the policy. The statement of Dr. Miller, contained in the proof of death, directly contradicted this representation of the insured, this physician stating that within two years prior to her application for insurance he had attended her for morphinomania, colliquative diarrhœa, and malarial fever, and that during the time he attended her she was bedridden for two months. It is contended by counsel for the plaintiff that the ruling of the trial court in rejecting the statement of Dr. Miller, above referred to, was, if erroneous, not harmful, as the proof of death showed that the insured had in fact died of bronchitis of only ten days' duration; and that, therefore, the complaints of diseases for which Dr. Miller had attended the insured in no way contributed to her death, and that the statement made by the insured in her application, that she had not been attended by a physician within two years for any disease or complaint, was immaterial. The materiality of these representations claimed to have been made by the insured, and which are claimed to have been untrue, relate to the risk assumed by the company in issuing the policy of insurance; and it can not be held, as matter of law, that the fact that the insured had, within two years prior to the date of her application, been attended by a physician for the disease men-

tioned in Dr. Miller's statement was not material to the risk.
Certainly this question was issuable. Section 2097 of the Civil
Code provides, that " Every application for insurance must be
made in the utmost good faith, and the representations con-
tained in such application are considered as covenanted to be
true by the applicant. Any variation by which the nature, or
extent, or character of the risk is changed, will void the policy."
If the representation made by the insured in her application for
the policy, that she had not been attended by a physician for
any disease or complaint within two years from the date of
her application, was a material representation, and if it varied
from the truth in such manner as to change the nature or extent
or character of the risk, then the policy is void. In this case,
moreover, the effect of the policy contract is to provide that the
untruth of the statement made by the applicant, touching the
fact of her bodily condition as to disease or complaints, or the
attendance of a physician on her for disease or complaint within
two years from the date of the application, would render the policy
void.

" Where an applicant for life-insurance covenants in his applica-
tion that the statements made to the medical examiner are true,
and these statements are made a part of the contract of insurance
and form the basis of such contract, any variation in any of them,
which is material, whereby the nature or extent or character of
the risk is changed, will avoid the policy, whether the statement
was made in good faith or wilfully or fraudulently." *Supreme
Conclave Knights of Damon* v. *Wood,* 120 *Ga.* 328 (47 S. E. 940).

For the foregoing reasons we think the judgment of the superior
court on certiorari, granting a new trial, should be affirmed, in-
stead of reversed; and it is ordered that a judgment of affirm-
ance be substituted for the judgment of reversal heretofore
rendered.                                *Judgment affirmed.*